KING, C.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. Rheno Patterson served in the U.S. military during the Korean War. During that service, particularly 1950 or 1951, Mr. Patterson purchased a life insurance policy. Rheno and Melba Patterson married on January 23, 1957. The Patterson’s marriage deteriorated, and on January 4, 1974, Mr. Patterson and Mrs. Patterson executed a “Separation Agreement” incident to their marital problems. On April 2, 1974, the Itawamba County Chancery Court incorporated that agreement into *498 the Patterson’s divorce decree. Mrs. Patterson remarried in July of 1974.
¶ 2. Mr. Patterson and Mrs. Patterson did not communicate again until 2003. On August 14, 2003, Mrs. Patterson filed a contempt action against Mr. Patterson. Mrs. Patterson alleged that Mr. Patterson was in contempt of the 1974 divorce decree because he stopped paying alimony after her 1974 remarriage. Additionally, Mrs. Patterson alleged that Mr. Patterson was in contempt of the 1974 decree because he changed Mrs. Patterson’s status as the beneficiary of his life insurance policy. Mr. Patterson responded and argued that he was not in contempt of court because his obligation to pay alimony to Mrs. Patterson ceased when she remarried. Further, Mr. Patterson argued that Mrs. Patterson’s claim was barred by the statute of limitations, and that the doctrine of laches precluded enforcement of Mrs. Patterson’s claim.
¶3. The Itawamba County Chancery Court conducted a hearing on the matter on February 19, 2004. Afterwards, the chancellor sustained Mrs. Patterson’s contempt claim and determined that Mr. Patterson owed Mrs. Patterson $13,650 in unpaid alimony. Further, the chancellor held that Mr. Patterson was in contempt of the 1974 decree when he changed Mrs. Patterson’s status as the beneficiary of his life insurance policy. Finally, the chancellor held that Mr. Patterson was responsible for $2,312.50 in Mrs. Patterson’s attorney’s fees. Mr. Patterson filed a motion to put on proof as to his inability to pay, but the chancellor denied Mr. Patterson’s motion.
¶ 4. On July 27, 2004, the chancellor issued a written order incorporating his findings following the February 2004 contempt hearing. Mr. Patterson filed a motion to reconsider or, alternatively, a motion to reduce the supersedeas bond. On August 25, 2004, the chancellor denied Mr. Patterson’s motion to reconsider, but the chancellor did reduce Mr. Patterson’s su-persedeas bond. Aggrieved, Mr. Patterson appeals and advances six allegations of error in the chancery court, listed verbatim:
1. Whether or not the lower court erred in viewing the January 4, 1974, Property Settlement Agreement incorporated by reference in the April 2, 1974, Divorce Decree as court directives instead of viewing the terms.
2. Whether or not the lower court erred in concluding that Mr. Patterson had an obligation of support to his former wife, Mrs. Broach, through periodic alimony payments after the time that she had remarried to another husband.
3. Whether or not the lower court erred in finding substantial, credible evidence that Mr. Patterson willfully and deliberately ignored or disobeyed the April 2, 1974, Divorce Decree of the parties.
4. Even if prima facie evidence of Mr. Patterson’s failure to comply with the lower court’s 1974 Divorce Decree existed, whether or not the lower court erred in not allowing Mr. Patterson to testify and present evidence as to his present inability to pay arrearages so as to purge himself from contempt of court.
5. Even if prima facie evidence of Mr. Patterson’s failure to comply with the lower court’s 1974 Divorce Decree existed, whether or not Mr. Patterson should avoid contempt of court after providing a combination of defenses: statute of limitations, laches, and present inability to pay arrearage.
*499 6. Whether or not the attorney fees and court costs should be assessed against Mr. Patterson instead of Mrs. Broach.
Finding error, we reverse and render.
STANDARD OF REVIEW
¶ 5. It is well-settled law that contempt matters are committed to the substantial discretion of the chancellor. Varner v. Varner, 666 So.2d 493, 496 (Miss.1995). This Court will not reverse a contempt citation where the chancellor’s findings are supported by substantial credible evidence. Id. ‘With respect to issues of fact where the chancellor made no specific finding, this Court proceeds on the assumption that the chancellor resolved all such fact issues in favor of the appellee, or at least in a manner consistent with the decree.” Smith v. Smith, 545 So.2d 725, 727 (Miss.1989) (quoting Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983)).
ANALYSIS
1. DID THE CHANCELLOR ERR IN FINDING THAT MR. PATTERSON WAS IN CONTEMPT FOR FAILING TO PAY ALIMONY TO MRS. PATTERSON?
¶ 6. The Pattersons executed what was styled as a “Separation Agreement” on January 4, 1974. This separation agreement included the following provisions:
III
That Husband shall pay unto Wife the sum of $150.00 per month as alimony, the first payment to commence on September 1, 1976 and a like amount due and payable on the first day of each successive month thereafter until said Wife departs this life.
VIII
That Husband shall maintain in full force and effect that certain life insurance policy presently insuring his life and shall maintain and designate and enjoin himself from changing the beneficiary from that of said Wife, said policy being a Veterans’ policy in the amount of Ten Thousand Dollars ($10,000.00).
¶ 7. This Agreement was attached as exhibit A to the Bill for Divorce filed by Mrs. Patterson. The Pattersons’ divorce decree, which was entered on April 24, 1974, provided, “That the Agreement attached to the Bill for Divorce and marked Exhibit ‘A’ is hereby approved by this Court, and incorporated herein by reference.” By approving this separation agreement and incorporating its provisions by reference, the Chancery Court adopted the agreement as part of the final decree. Switzer v. Switzer, 460 So.2d 843, 845-46 (Miss.1984). Therefore, the final decree subjected Mr. Patterson to possible punishment for contempt, should he violate the court’s directives in the decree.
¶ 8. While incorporating by reference the separation agreement, the chancellor, consistent with maldng the agreement his directive, modified the provision dealing with periodic alimony, consistent with the well-established law of this State, to provide for the termination of alimony upon the remarriage of Mrs. Patterson. Sides v. Pittman, 167 Miss. 751, 150 So. 211, 212 (Miss.1933). What is commonly referred to as periodic alimony terminates automatically upon the death of the paying spouse or the remarriage of the receiving spouse. Waldron v. Waldron, 743 So.2d 1064,1065 (¶ 5), (Miss.Ct.App.1999). Because this was periodic alimony, the alimony terminated when Mrs. Patterson became Mrs. Broach in July of 1974.
*500 ¶ 9. It was therefore error to find Mr. Patterson in contempt for not paying alimony, which he was no longer obligated to pay.
2. DID THE CHANCELLOR ERR IN FINDING MR. PATTERSON IN CONTEMPT FOR CHANGING MELBA’S STATUS AS THE BENEFICIARY OF MR. PATTERSON’S LIFE INSURANCE POLICY?
¶ 10. This divorce case was decided prior to the recognition of equitable distribution by our supreme court in Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss.1994). Thus the only reasons for which the chancellor could have required that the former Mrs. Patterson be retained as the named beneficiary on the life insurance policy would have been to insure the payment of child support or alimony. (See Johnson v. Pogue, 716 So.2d 1123, 1134(¶ 42) (Miss.Ct.App.1998); Arthur v. Arthur, 691 So.2d 997, 1001 (Miss.1997)).
¶ 11. When this action for contempt was started, the child of the parties was well into adulthood, so that the obligation to pay child support had ended. Caldwell v. Caldwell, 823 So.2d 1216, 1220(¶ 12) (Miss.Ct.App.2002) (citing Miss.Code Ann. §§ 93-5-23, 93-11-65 (Supp.2001)). Likewise, the obligation to pay alimony ceased when Mrs. Patterson became Mrs. Broach less than four months after the divorce. West v. West, 891 So.2d 203, 212(¶ 21) (Miss.2004) (citing East v. East, 493 So.2d 927, 931 (Miss.1986)). There being no acceptable reason to maintain Mrs. Broach as the beneficiary of the life insurance policy, the chancellor committed error in holding Mr. Patterson in contempt.
¶ 12. The purpose of civil con- ■ tempt is first and foremost to obtain compliance with the lawful directives of a court. Witters v. Witters, 864 So.2d 999, 1004(¶ 18) (Miss.Ct.App.2004) (citing Lahmann v. Hallmon, 722 So.2d 614, 620(¶ 19) (Miss.1998)). Mr. Patterson technically violated the directive of the court by removing Mrs. Broach as the beneficiary of his life insurance policy. However, our supreme court has stated:
“It is axiomatic that before a person .may be held in contempt of a court judgment, the judgment must ‘be complete within itself — containing no extraneous references, leaving open no matter or description or designation out of which contention may arise as to the meaning. Nor should a final decree leave open any judicial question to be determined by others, whether those others be the parties or be the officers charged with execution of the decree. ...’ ”
Wing v. Wing, 549 So.2d 944, 947 (Miss. 1989) (quoting Morgan v. U.S. Fidelity & Guaranty Co., 191 So.2d 851, 854 (Miss. 1966)). Since Mr. Patterson no longer had any financial obligation to Mrs. Broach, the validity of the insurance beneficiary provision of the divorce decree was called into question. Although Mr. Patterson should have sought to have the decree modified prior to changing the beneficiary on his life insurance policy, a finding of contempt is a seemingly harsh result in light of the circumstances. To require Mr. Patterson to comply with the provision of the decree in question would result in Mrs. Broach’s being unjustly enriched. Because the reasons for requiring that Mrs. Patterson be maintained as the designated beneficiary on Mr. Patterson’s veterans life insurance policy had ended, this Court finds that the chancellor committed error by holding Mr. Patterson in contempt on this matter, and therefore we reverse and render.
*501 3. DID THE CHANCELLOR ERR WHEN HE ORDERED MR. PATTERSON TO PAY MRS. PATTERSON’S ATTORNEY’S FEES AND ALL COURT COSTS?
¶ 13. Because we reverse and render this matter, we find that the chancellor erred in awarding áttorney’s fees to Mrs. Patterson. Walters v. Walters, 383 So.2d 827, 828 (Miss.1980).
¶ 14. THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE AND MYERS, P JJ., IRVING AND GRIFFIS, JJ., CONCUR. ISHEE, J., CONCURS IN PART. BRIDGES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, BARNES AND ISHEE, JJ.