# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01006-COA

C.H. MILES                                                               APPELLANT

v.

BRENDA C. MILES                                                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/17/2013 |
| TRIAL JUDGE: | HON. JOSEPH KILGORE |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JEFFREY J. HOSFORD |
| ATTORNEY FOR APPELLEE: | J. MAX KILPATRICK |
| | CALEB ELIAS MAY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | JUDGMENT OF CONTEMPT ENTERED |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 01/27/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1. On May 17, 2013, the Winston County Chancery Court entered a judgment finding Carlos H. Miles Jr. in contempt and granting other relief for Carlos's failure to comply with the property-settlement agreement that had been incorporated into a divorce judgment entered on February 16, 2000. Carlos appeals. Finding error in the chancellor's finding of contempt and award of attorney's fees, we reverse and render in part, but affirm in all other respects.

## FACTS AND PROCEDURAL HISTORY

¶2.     On February 16, 2000, Carlos and Brenda Miles were granted a judgment of divorce in the Chancery Court of Winston County. Pursuant to the terms of the property-settlement agreement, Carlos was ordered to place Brenda's name on Carlos's individual retirement account (IRA) as a joint tenant with full rights of survivorship. On October 16, 2012, Brenda filed a motion for contempt alleging that Carlos had willfully, contemptuously, and intentionally refused to place her name on the IRA account, and asking that the Carlos be ordered to pay her $28,929.72, one-half of the of the total value of the account.[1]

¶3.     A hearing on the motion for contempt was held on May 1, 2013. Brenda testified that on the day that the judgment of divorce was entered, she and Carlos went to the Bank of Mississippi to have Brenda's name added to the IRA. According to Brenda, they spoke to Ilene Estes,[2] a bank officer, who told them that the bank could not add Brenda's name to Carlos's IRA and that if they withdrew the funds at that time, the account would incur penalties and they would lose half of the money in the account. Brenda stated that Estes recommended that the funds be left in the IRA until they matured; then the funds could be withdrawn and divided without incurring penalties. After leaving the bank, Brenda testified that a conversation took place between her and Carlos in which Carlos stated that they would leave the funds in the IRA until a date closer to his retirement when the funds matured.

¶4.     Carlos also testified at the hearing. Carlos's version of the events on the day the judgment of divorce was entered differed from Brenda's account. Carlos testified that on

---

[1] The amount of the judgment was the amount shown in the account that was withdrawn, which totaled $26,086.53.

[2] Estes did not testify at the hearing.

February 16, 2000, he went to the bank alone and met with Estes. According to Carlos, he presented Estes with the judgment of divorce and the property-settlement agreement and asked that Brenda be added to the IRA account; however, Estes told Carlos that Brenda's name could not be added because "IRA means exactly what it says: individual retirement account. . . . You're an individual. You can't put two names on it." Carlos said that he called Brenda from Estes's office and informed her that he was unable to add her to the account. According to Carlos, Brenda said that she would contact her attorney and advise him of the situation; however, Carlos testified that Brenda did not contact him further about the matter.

¶5.     According to Brenda, she contacted the bank in 2009 to check on the status of the IRA account and discovered that nearly half of the money in the IRA had been withdrawn. According to account records received into evidence at the hearing, Carols withdrew $20,720.19 on September 1, 2004; $2,400 on September 2, 2004; and $3,333.33 on January 8, 2009. Brenda contacted her attorney, who sent Carlos a letter in September 2009, stating that the IRA was joint property and that Brenda was to be notified of any account activity. Nevertheless, on February 23, 2009, Carlos withdrew $7,777.78, and on January 4, 2010, Carlos withdrew $17,941.75, closing the account.

¶6.     The chancellor entered a judgment of contempt, finding that Carlos was in civil contempt for his failure to place Brenda's name on the IRA as a joint tenant with full rights of survivorship as directed by the property-settlement agreement incorporated into the judgment of divorce. Brenda was awarded a judgment of $26,086.53 and $1,000 in attorney's fees. Carlos appeals raising the following issue: whether he had a complete

3

defense to contempt due to impossibility of performance.

## DISCUSSION

¶7. "It is well-settled law that contempt matters are committed to the substantial discretion of the chancellor." *Patterson v. Patterson*, 915 So. 2d 496, 499 (¶5) (Miss. Ct. App. 2005). This Court "will not reverse a contempt citation where the chancellor's findings are supported by substantial credible evidence." *Id.* Likewise, we do not "interfere with the chancellor's findings of fact unless they were manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Caplinger v. Caplinger*, 108 So. 3d 992, 995 (¶6) (Miss. Ct. App. 2013) (quoting *Tucker v. Prisock*, 791 So. 2d 190, 192 (¶10) (Miss. 2001)). Finally, "the chancellor's application of the law is reviewed under a de novo standard." *Id.*

¶8. Carlos asserts that the chancellor erred in finding him in contempt because, based on the evidence and testimony at the hearing, Carlos was unable to comply with the property-settlement agreement. We agree.

¶9. Enforcing compliance with a court order is a matter of civil contempt. *Evans v. Evans*, 75 So. 3d 1083, 1087 (¶14) (Miss. Ct. App. 2011); *see also Dennis v. Dennis*, 824 So. 2d 604, 608 (¶8) (Miss. 2002) (explaining that the primary purpose of a civil contempt order is to "enforce the rights of private party litigants or enforce compliance with a court order"). "However, 'a citation of contempt is proper only when the contemnor has willfully and deliberately ignored an order of the court.'" *A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1019 (¶50) (Miss. 2012) (quoting *Riddick v. Riddick*, 906 So. 2d 813, 826 (¶42) (Miss. Ct. App. 2004)).

¶10. Paragraph IX of the property-settlement agreement provided: "[Carlos] shall place

4

[Brenda's] name on his Individual Retirement Account (IRA) Certificate of Deposit at [the] Bank of Mississippi, as joint tenant with full rights of survivorship." Brenda's and Carlos's testimonies pertaining to their actions on February 16, 2000, vary. Carlos testified that he went to the bank alone and was told that he could not place Brenda's name on his IRA. Brenda testified that she accompanied Carlos to the bank and was told that Carlos could not place her name on his IRA. Brenda testified that, upon learning of Carlos's inability to place her name on the IRA, she and Carlos agreed that Carlos would add her name at the date of maturity. However, paragraph XVII of the property-settlement agreement provides that the agreement "constitutes the entire agreement between the parties . . . [and] no oral representation made by either party will be considered binding on either party and . . . [the] agreement may be changed or modified only by written agreement of the parties[.]" Nevertheless, both Carlos's and Brenda's testimonies support Carlos's contention that he was unable to comply with the property-settlement agreement. Thus, it is undisputed that Carlos was unable to comply with the directive of the property-settlement agreement.

¶11.    The Mississippi Supreme Court has held that "[a] property[-]settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character." *Dalton v. Dalton*, 874 So. 2d 967, 971 (¶10) (Miss. 2004). Our supreme court has also held that "[w]hen the language of the contract is clear or unambiguous, we must effectuate the parties' intent . . . . However, if the language of the contract is not so clear, we will, if possible, harmonize the provisions in accord with the parties' apparent intent." *West v. West*, 891 So. 2d 203, 210 (¶14) (Miss. 2004) (internal citations and quotations omitted). Finally, "courts

5

of equity have certain discretionary power in the matter of decreeing the specific performance of contracts and they may and should make equitable modifications in the form of relief granted where to do otherwise would result in undue hardship or injustice." *Dalton*, 874 So. 2d at 971 (¶10).

¶12. At the hearing, the testimony of the parties clearly demonstrated that Carlos was unable to comply with the paragraph IX of the property-settlement agreement. Therefore, we find that the chancellor erred in finding Carlos in contempt and awarding Brenda attorney's fees, and reverse those findings.

¶13. Here, the property-settlement agreement ordered Carlos to add Brenda to his IRA as a joint tenant with full rights of survivorship. A joint tenancy is a tenancy "with two or more coowners who take identical interests simultaneously by the same instrument and with the same right of possession." Black's Law Dictionary 1603 (9th ed. 2009). A "right of survivorship" is "[a] joint tenant's right to succeed to the whole estate upon the death of the other joint tenant." *Id.* at 1440. The property-settlement agreement does not reference the value of the IRA and is vague as to the value that Brenda was to receive and the actual date that Carlos was to place her name on the IRA. As the chancellor noted in his bench opinion, the property-settlement agreement "doesn't reflect a balance of the IRA . . . . It doesn't say anything about Brenda or Carlos having a one-half interest. It does not say when [Carlos] was to put [Brenda's] name on the IRA." Thus, the chancellor fashioned an equitable remedy and awarded Brenda one-half of the value of Carlos's IRA. Therefore, we find that the chancellor was correct in awarding Brenda a judgment of $26,086.53. Accordingly, the judgment awarding Brenda $26,086.53 is affirmed, and the judgment of contempt and award

6

of $1,000 in attorneys's fees for contempt are reversed and rendered.

¶14.    **THE JUDGMENT OF THE CHANCERY COURT OF WINSTON COUNTY IS AFFIRMED IN PART, AND REVERSED AND RENDERED IN PART.  ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**