805 So.2d 649 (2002)
Robert E. ROBERTS, Appellant,
v.
Beverly Nettles BROWN, Appellee.
No. 2000-CA-01917-COA.
Court of Appeals of Mississippi.
January 22, 2002.
David A. Roberts, Pascagoula, Attorney for Appellant.
Jim Davis Hull, Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
IRVING, J., for the Court.
¶ 1. Robert E. Roberts appeals from a decision of the Chancery Court of Jackson County denying his request to have his child support obligations terminated. He contends that the trial court committed manifest error in failing to relieve him of future child support obligations. We agree and reverse and render the decision of the trial judge.

*650 FACTS
¶ 2. On March 24, 1998, Roberts, the natural father of Margaret Roberts, filed a complaint for modification seeking relief from his obligation to pay child support for Margaret because Margaret refused to visit him and because Margaret's mother, Beverly Nevels Brown, did not encourage visitation between him and Margaret. Mrs. Brown answered the complaint and filed a counterclaim in which she contended that Mr. Roberts filed the complaint for the purpose of harassing and intimidating her and Margaret. She sought an injunction to prevent future harassment.
¶ 3. The hearing on the complaint for modification was held on October 4, 2000. During the hearing, Margaret testified that her father raped her twice during a weekend visit in April 1995. She gave the following synopsis of the rape incident:
And that night we went back in the house and, you know, I watched TV for a little while, went to bed. That's when he came in the room. And, you know, from then he raped me. So that night I left and went and got on the couch. And then I, you know, I kind of dozed off and went to sleep. That morning he came and, you know, did the act again. And that morning he took me home. He told me not to tell anyone because he would go to jail for a long time. You know, don't tell anyone what happened and he took me home. I told him I had to go to work with my mom. He took me home. And from then on I went to the hospital. That was basically it, to sum it up.
¶ 4. Margaret further testified that she was twelve years old at the time and had not had sex with anyone before this incident. She was eighteen years old at the time of the hearing. She testified that she had not visited him since April 23, 1995, that she did not love him, that she did not want to visit or communicate with him, that she had had time to visit him but chose not to, and that if the court ordered her to visit her father, she would not do so. She further testified that she did not desire to have a relationship with her father and that she did not even like him. She stopped just short of saying she hated him, explaining that one is not suppose to hate others.
¶ 5. Prior to April 1995, there had been discussions between Mr. Roberts and Mrs. Brown regarding Mr. Roberts's obtaining custody of Margaret because Mrs. Brown had told him that Margaret was in the streets at night and Mrs. Brown could not control Margaret. In her testimony, Mrs. Brown corroborated the discussions regarding change of custody and her difficulties in rearing Margaret. Discussions regarding changing custody had also occurred with Margaret. Approximately three weeks to a month passed between the last conversation regarding the change of Margaret's custody and Mr. Roberts's arrest. Mr. Roberts was accused of raping Margaret and arrested the first weekend he exercised visitation after the last custody discussion.
¶ 6. Mrs. Brown testified that she wants Mr. Roberts to continue to pay child support but does not want him visiting with Margaret. She had not encouraged Margaret to have any visitation with Mr. Roberts and did not want any contact between Mr. Robert and his daughter. She further testified that she could not imagine a circumstance where she would feel comfortable with Mr. Roberts visiting with his daughter. She also testified that she had never taken Margaret to counseling in the last five years to help Margaret resolve her conflict with Mr. Roberts. Finally, Mrs. Roberts testified that, in the victim impact statement, she recommended that Mr. Roberts receive life without parole.
*651 ¶ 7. Deputy Bruce Nevels was called to testify by Mrs. Brown. He was employed with the Jackson County Sheriffs Department and had been for thirteen years. He recalled that he went to Singing River Hospital and spoke with Margaret regarding a sexual assault. He then went to the address provided and spoke to Mr. Roberts who was standing outside by his vehicle. Deputy Nevels stepped out of his vehicle and identified himself. He remembered Mr. Roberts saying, "I've been expecting you." However, Deputy Nevels could not recall the details of the interrogation. He also testified that Mr. Roberts said he felt bad about what Roberts had done.
¶ 8. Officer Jim Roe accompanied Deputy Nevels on the trip to arrest Mr. Roberts. Officer Roe was not called to testify, but his testimony was proffered. The proffer was as follows:
That if Officer Roe had been called to testify, Roe would testify as he did in the previous [criminal] trial that he was present when they arrived at the scene to makewhen Bruce Nevels and he arrived at the scene to make the arrest of Robert Roberts on April 23, 1995. That Mr. Roberts exited the house. That he was instructed that he was being arrested for rape. And that Mr. Roberts made no comment that he heard. That he was in a position to hear same standing next [sic] Mr. Nevels and that he did not hear Mr. Roberts make a single comment regarding, one, that he expected to see them or two, that he had had sex with his daughter.
¶ 9. Mr. Roberts testified that he was arrested and charged with two counts of rape on April 25, 1995. He was allowed bond pending his trial. However, as a condition of bond, he was prohibited from having any contact with Margaret. He was acquitted on October 26, 1996. Mr. Roberts testified during the hearing on his complaint for modification that he had not had any visitation with Margaret following his acquittal. He testified that he did not rape his daughter. He further testified that during the interim between his arrest and trial, he was scared to contact his daughter and thought it best not to contact her due to her charging him with capital rape and exposing him to a potential life or death sentence. At the time of the hearing, he had had no telephonic or physical contact with Margaret Roberts since April 25, 1995.
¶ 10. Dr. James Weatherall examined Margaret after the alleged rape and was called during the hearing to testify by deposition. The examination took place on April 23, 1995, at Singing River Hospital. Dr. Weatherall testified that on a twelve-year-old child he would expect there to be some signs of trauma from a rape. A vaginal exam revealed no swelling, no redness, no trauma to the outer or inner vagina, and no abrasions. The vaginal area was not sensitive and there was nothing from his examination that physically corroborated the claim of sexual assault. In regards to Margaret's demeanor, Dr. Weatherall testified that she was not upset, not crying, not hysterical, not in shock, and did not appear to be under enormous stress. She was cooperative and not overly shy. No physical signs of penetration of the vagina were noted upon examination. Although she no longer had her hymen, there was nothing in the examination that indicated that she had lost her hymen recently. He testified that it is not uncommon for a twelve-year-old to be missing her hymen. There was no blood as would be expected if she had been deflowered. In other words, there was nothing to indicate that she had been penetrated. Dr. Weatherall testified that if Margaret's hymen was intact thirty-six hours before the *652 rape and the rape occurred within the past twenty-four hours, he would expect to see some evidence of trauma, bleeding, irritation or something. The Mississippi Crime Laboratory Report was negative for the presence of seminal fluid upon serological examinations of the vaginal slides, swabs and clothing worn by Margaret.
¶ 11. As stated, the trial judge denied the relief requested by Roberts; in reaching his decision, the judge stated:
This issue is very difficult. If the court is going to err, it will err on the side of the child and caution. There is a different burden of proof required in this case than the burden of proof required in a capital rape case. The proof here is by the greater weight of the evidence and further with the broad discretion that chancellors have in the course of determining the best interest of the child is applied as well.
It appears from the differences that have ensued for whatever reason and the length of time in which the parties have not visited, Mr. Roberts' relief should be DENIED. He should continue to pay his obligation as the prior order of the court has provided. As the sole trier of fact and the judge of the weight, worth and credibility of the witnesses, the Court would find from the evidence that the child has a more convincing story as well as the statement of a disinterested officer at the time Mr. Roberts was arrested.
Therefore, the Court determines that it is in the best interest of Margaret Roberts that she should not be required to visit with her father for the facts set forth in this record. See Hambrick v. Prestwood, 382 So.2d 474 (Miss.1980); Caldwell v. Caldwell, 579 So.2d 543 (Miss.1991); Boleware v. Boleware, 450 So.2d 92 (Miss.1984). The Court concludes that the circumstances and the results of this relationship was [sic] solely precipitated by the father and therefore he should continue his obligation until the child is emancipated as defined by Miss.Code Ann. § 93-5-23, XX-X-X-XX (Supp.1996).

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 12. The standard of review in child support cases is that a chancellor's ruling will remain undisturbed unless there is a showing of manifest error. Westbrook v. Oglesbee, 606 So.2d 1142, 1146 (Miss.1992). However, when an appellee does not file a brief, this deference is reduced. "We treat the failure to file a brief as a confession of error unless from the face of the appeal there manifestly is none." In the Interest of R. T., 520 So.2d 136, 138 (Miss.1988). In this case, Mrs. Brown did not file an appellate brief in this cause. Thus, our task is to determine if we can say unequivocally that no error appears in the record. We cannot.
¶ 13. Roberts contends that the court committed manifest error in not terminating his obligation to pay child support for Margaret. He asserts that he should be relieved of having to pay child support because he was wrongfully accused by Margaret of rape and because Margaret does not visit him or exhibit any desire to develop a relationship with him. He argues that Margaret's accusation of rape should be considered a material change in circumstances so clear and extreme as to result in the forfeiture of continued child support.
¶ 14. The chancellor explained in his judgment that although Roberts was acquitted of the capital rape charges, he found Margaret's testimony as well as the testimony of the "disinterested officer" who arrested Roberts more convincing. The chancellor also acknowledged, and we *653 agree, that there is a different burden of proof in a domestic relations case than what is required in a rape case. The chancellor is not bound by the findings of the criminal court. However, a witness' testimony in the criminal proceeding and any discrepancies between the witness' testimony in the criminal proceeding and his testimony in the civil proceeding should not go unnoticed. We note that Margaret gave substantially different testimony in the modification proceeding regarding the details of the rape than she gave in the criminal proceedings. In a normal appeal, the chancellor's weighing of the conflicts would be given substantial weight and deference, but, when the appellee has implicitly confessed error, we are more concerned about such discrepancies.
¶ 15. Margaret testified in the case sub judice that she was raped first in the bedroom then a second time on the couch in the living room. However, she admitted testifying in the criminal case that Mr. Roberts had taken her from the couch to the bedroom for sex the second time. Margaret further testified that when the first act occurred, Mr. Roberts was on top of her. She was sure about him being on top. Upon being shown a hand-written statement she had given at the hospital, she admitted that in the statement she said she was on top. Under intense cross-examination, she admitted that she did not remember where the second rape occurred. She testified that she did not remember if Mr. Roberts ejaculated. However, she admitted that she had testified in the criminal trial that Mr. Roberts had ejaculated and left a "wet spot." Margaret gave other insightful testimony. For example, she testified that she went to the hospital the morning after being returned from visitation wearing the same clothes that she had on the night before and had not showered or bathed prior to going to the hospital. She had not gotten wet, nothing had spilled on her clothes, and her clothes had not been washed.
¶ 16. We also find it quite noteworthy that Margaret's contention that she was a virgin at the time of the rape seems to be quite at odds with the medical evidence and testimony offered by Dr. Weatherall. Taking all of these discrepancies into account in light of our less deferential standard of review, we cannot state unequivocally that no error appears in this record.
¶ 17. As stated, Roberts contends that Margaret has abandoned the father-daughter relationship. He cites to Caldwell v. Caldwell, 579 So.2d 543 (Miss.1991) for the proposition that the abandonment of the relationship by Margaret, along with the accusation of rape made by her, should be considered clear and extreme enough to constitute a forfeiture of child support.
¶ 18. In Caldwell, the father sought to be relieved of paying child support. The father contended that the son had abandoned the father-son relationship. The Caldwell court held that the non-custodial parent has an obligation to meet the needs of the child according to what is in the child's best interest, not based on the amount of affection the child shows that parent. Id. at 548. The court in Caldwell, however, recognized that there might be some instances when a child's actions could cause a forfeiture of child support. That recognition is reflected in the following quote: "It is not suggested that there could never be a situation where a minor child ... might by his actions forfeit his support from a non-custodial parent. Those actions would have to be clear and extreme...." Id.
¶ 19. Roberts believes that the case before us is the case envisioned by the Caldwell court. We share that belief.
¶ 20. The chancellor found that "the circumstances and the results of this relationship *654 was [sic] solely precipitated by the father...." Again, we cannot find that there is manifestly no error on the face of this appeal. The chancellor's finding that the father's action precipitated the deterioration of the relationship with the daughter undergirds the ultimate decision reached by the chancellor to deny the modification. However, we, having found sufficient doubt that Mr. Roberts caused the estrangement of the relationship with Margaret, reverse and render the decision of the chancellor denying a modification of Roberts's child support obligation. Accordingly, it is ordered that Roberts's obligation to pay child support for Margaret is terminated retroactively as of the date of the judgment from which this appeal was taken.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLEE.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.