823 So.2d 1216 (2002)
Herbert Peter CALDWELL, Appellant
v.
Linda Ann McGee CALDWELL, Appellee.
No. 2000-CA-01747-COA.
Court of Appeals of Mississippi.
August 13, 2002.
*1218 David M. Sessums, Vicksburg, for appellant.
Felecia Perkins, Jackson, for appellee.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the Court.

Procedural History and Factual Summary
¶ 1. The parties received a divorce on March 20, 1992. Two children, Daytron (date of birth April 29, 1975), and Cheree (date of birth March 15, 1980), were born of the union. Mrs. Linda Caldwell (Linda) was granted custody of the minor children and Mr. Herbert Caldwell (Herb) was ordered to pay the sum of $500 per month in child support. This order did not break down the specific amount to be paid per child. The divorce decree additionally granted Linda a cash property settlement of $6,000, to be paid in monthly installments.
¶ 2. Several motions were filed throughout the prior proceedings. Linda filed her first motion for modification and for contempt on January 24, 1996, alleging Herb was behind in his court ordered obligations. He responded on February 20, 1996. The Chancery Court of Warren County found Herb in contempt for past due child support in the sum of $4,250 and for past due property settlement payments in the sum of $4,898.12. The chancellor also awarded Linda attorney's fees in the amount of $800. That order was signed on July 18, 1996.
¶ 3. The record indicates that Herb brought his child support payments up to date, but that he chose to not pay the attorney's fees and cash property settlement. On November 8, 1996, Herb filed a "motion to re-set child support" [sic][1] based on Daytron reaching the age of twenty-one on April 29, 1996. However, Herb continued to pay the ordered child support of $500 per month. Herb never brought this so-called motion for hearing and on June 19, 2000, Linda filed her response to Herb's filing, claiming that Herb should not be heard because he entered court with unclean hands for his failure to comply with the July 18, 1996 contempt order.
¶ 4. On July 10, 2000, Herb filed a "motion to terminate child support" [sic][2] and requested credit or reimbursement for payments after Daytron's legal emancipation *1219 on April 29, 1996. He further alleged Cheree had become emancipated no later than December 31, 1999, based on the fact that she was over the age of eighteen years, had dropped out of school, did not have a good relationship with her father and had her first child in May of 2000. On July 10, 2000, the date said motion was filed, Cheree was twenty years old, to turn twenty-one on March 15, 2001. Also on July 10, 2000, Herb filed his response to the allegations dating back to 1996 that he was still in contempt and owed the sum of $5,698.12 for the cash property settlement and attorney's fees. Thereafter, on August 16, 2000, Linda filed a motion for contempt against Herb for his failure to pay the delinquent property settlement and attorney's fees and her response to his motion of July 10, 2000.
¶ 5. A hearing was held on September 11, 2000, finding Herb in contempt for failure to pay the past due cash property settlement of $4,898.12 and failure to pay the formerly awarded $800 in attorney's fees in 1996. Herb was also ordered to pay another $750 for attorney's fees associated with the September 2000 hearing. The chancery court also entered an order on September 11, 2000, terminating all child support for Daytron and Cheree, finding Cheree emancipated as of July 1, 2000.
¶ 6. Aggrieved, Herb perfected his appeal and comes before this Court citing the following issues:
I. Did the lower court err as a matter of law in determining that the daughter, Cheree Caldwell, was not effectively emancipated as of December 31, 1999;
II. Did the lower court err in not giving Herbert Peter Caldwell credit for overpayments made after the parties' son, Daytron Caldwell, reached the age of majority on April 29, 1996;
III. Did the lower court err in failing to give Herbert Peter Caldwell credit for damages to the former marital domicile and whether or not said issue was precluded by prior order of the court;
IV. Did the lower court err in assessing $750 in attorney's fees against Herbert Peter Caldwell; and
V. Whether the judgment of the lower court is supported by the credible evidence.
¶ 7. Finding error, we affirm in part and reverse and remand in part.

Standard of Review
¶ 8. This Court's scope of review of the findings of a chancellor in domestic relations matters is limited. Pearson v. Pearson, 761 So.2d 157, 162(¶ 14) (Miss. 2000). The findings of the chancellor will be overturned on appeal only if "manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." Id. No finding will be disturbed or set aside if supported by "substantial, credible evidence." Id.

Legal Analysis

I. Did the lower court err as a matter of law in determining that the daughter, Cheree Caldwell, was not effectively emancipated as of December 31, 1999?
¶ 9. Herb argues Cheree was effectively emancipated on December 31, 1999, and the lower court was in error for failing to recognize this fact. He bases his argument on Cheree's decision not to continue her education after the fall 1999 semester, Cheree's decision to have a child out of wedlock, the lack of communication between father and daughter and Cheree's receipt of child support from the father of her child.
*1220 ¶ 10. Linda argues that Cheree was not emancipated because she was only twenty years of age, was living with and primarily supported by her mother and only had limited employment. She further argues that the lower court was correct because Herb chose to continue to pay child support even after he claims Cheree was emancipated and that child support payments are vested with the child and "cannot be modified or forgiven by the courts," following Tanner v. Roland, 598 So.2d 783, 786 (Miss.1992).
¶ 11. Our supreme court defined emancipation in Caldwell v. Caldwell, 579 So.2d 543, 549 (Miss.1991) (citing Pass v. Pass, 238 Miss. 449, 454, 118 So.2d 769, 771 (1960)), as follows:
Emancipation, as employed in the law of parent and child, means the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it.
¶ 12. The statutes governing emancipation are found in sections 93-5-23 and 93-11-65 of the Mississippi Code, which both state in pertinent part:
The duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when that child:
(a) Attains the age of twenty-one years, or
(b) Marries, or
(c) Discontinues full-time enrollment in school and obtains full-time employment prior to attaining the age of twenty-one (21) years, or
(d) Voluntarily moves from the home of the custodial parent or guardian, and established independent living arrangements and obtains full-time employment prior to attaining the age of twenty-one (21) years.
Miss.Code Ann. §§ 93-5-23 and 93-11-65 (Supp.2001). "A parent is relieved of the legal duty to support his child once the child is emancipated whether by attaining the age of majority or otherwise." Crow v. Crow, 622 So.2d 1226, 1229 (Miss.1993).
¶ 13. The statutory language is not exclusive. The statute only defines when a court may find that a child is emancipated as a matter of law. Other situations, not contemplated by the statute, may also establish emancipation. See Rennie v. Rennie, 718 So.2d 1091, 1093-94 (¶¶ 8-9) (Miss.1998). For example, a child having a baby out of wedlock or moving out of the parent's home to live with a boyfriend or girlfriend. Id.
¶ 14. The last time Herb paid child support was in May of 2000, the month Cheree's child was born. Cheree testified at the hearing that the father of her baby was paying approximately $160 per month in child support. Cheree has been living with her mother for about a year but has not attended school since the fall semester of 1999, which ended in December of 1999. Cheree works part-time as a switchboard operator, working every other weekend, about four to six days a month. This is her only employment and she stated that she has chosen not to seek full-time work.
¶ 15. Herb's argument about the diminished relationship between himself and Cheree is inconsequential. Furthermore, his argument is not supported by any relevant case law. Our search has led us to two cases that address this specific point, Caldwell v. Caldwell, 579 So.2d 543, 548-49 (Miss.1991), and Roberts v. Brown, 805 So.2d 649, 653-54 (¶¶ 17-20) (Miss.Ct. App.2002). Caldwell ruled that parent-child *1221 relationships can be difficult but did not rise to the level of emancipation in a situation of lack of communication. Caldwell, 579 So.2d at 548. However, Caldwell hinted to a more extreme situation which could lead to emancipation and the termination of child support. Id. This more extreme situation was illustrated in the Roberts case where a child accused her father of rape. Roberts, 805 So.2d at 650(¶ 3). The father was acquitted and the child support was terminated. Id. at 654 (¶ 20). The facts in the case at bar are distinguishable from the situation in Roberts. The relationship between Cheree and Herb was not perfect, but it was not severe enough to warrant any action.
¶ 16. Examining the case at bar, Cheree made the decision to make the leap into adulthood. She became pregnant at a time when she was not married. She made the decision not to complete her education. She made the decision not to work full-time. Based on these adult decisions, along with the fact that the baby's father is providing financial support for Cheree's child, we find that Cheree is an emancipated adult and the lower court's ruling on this issue was correct.

II. Did the lower court err in not giving Herbert Peter Caldwell credit for overpayments made after the parties' son, Daytron Caldwell, reached the age of majority on April 29, 1996?
¶ 17. Herb requested credit for child support payments made after Daytron reached the age of majority on April 29, 1996. Linda argues that Herb voluntarily made the payments and therefore should not be allowed credit. She further argues that she used the money for support for the children who were continuing to live with her.
¶ 18. The record dictates that Herb filed a "motion for re-set [sic] of child support" seven months after Daytron's twenty-first birthday. However, for reasons unknown, this motion was never set for hearing. Case law in this state is clear in that a father does not get an automatic reduction in child support when one child reaches maturity. See Wilson v. Wilson, 464 So.2d 496, 497-98 (Miss.1985); Schilling v. Schilling, 452 So.2d 834, 836 (Miss.1984).
¶ 19. Concerning the credit aspect, our supreme court has previously held that a chancellor should have the discretion to grant an obligor parent a credit for child support payments which were made on behalf of a child subsequent to that child's emancipation. Department of Human Servs., State of Mississippi v. Fillingane, 761 So.2d 869, 872 (¶ 13) (Miss.2000). See also Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989). The "motion for re-set [sic]" asked for a reduction in the amount of child support payments from $500 in the original order for the two children to an amount of $302, representing 14% of Herb's net income for the remaining minor child. That motion followed our state guidelines for the amount of child support to be granted for one child. Miss.Code Ann. § 43-19-101(1) (Supp.2001). That motion was filed on November 8, 1996. As the case law indicates. Herb is owed a credit for the amount of overpayments concerning Daytron from the November filing date until the present. See Fillingane, 761 So.2d at 872(¶ 13); Sumrall v. Munguia, 757 So.2d 279, 284 (¶¶ 27-28) (Miss.2000); Houck v. Houck, 812 So.2d 1139, 1143 (¶¶ 11-12) (Miss.Ct.App.2002); Ligon v. Ligon, 743 So.2d 404, 408(¶ 13) (Miss.Ct.App.1999). Additionally, Herb is also due a credit for the time that all child support payments should have ceased in July of 2000, as that was the time that Cheree was also emancipated.
*1222 ¶ 20. The chancellor's decision was in error and we reverse and remand with instructions for the chancery court to determine the specific amount of credit Herb is owed, following the child support guidelines set forth in the Mississippi Code, dating from November to the present for Daytron's emancipation and from July of 2000 to the present for all child support payments.

III. Did the lower court err in failing to give Herbert Peter Caldwell credit for damages to the former marital domicile?
¶ 21. Herb argues that he was entitled to a credit for the cash property settlement due to Linda's damage to the marital domicile when she vacated the home. He bases this argument on the original divorce decree, which allegedly allowed for cash property credit for any needed repairs Herb found necessary when he retook possession of the marital home. He also states that the lower court did not properly address this issue so therefore he is not procedurally barred from raising this issue on appeal. Linda asserts that this issue has already been decided by the lower court in the contempt hearing and order issued in 1996 when Herb raised the repairs as a defense to the allegation of his cash property arrearage.
¶ 22. "This Court can act only on the basis of the contents of the official record.... It may not act upon statements in briefs or arguments of counsel which are not reflected by the record." Porter v. State, 749 So.2d 250, 256 (¶ 18) (Miss.Ct. App.1999). The original divorce decree was not made a part of the record. Therefore, we can not examine the decree to determine how it relates to the current issue. Therefore, this issue is procedurally barred.

IV. Did the lower court err in assessing $750 in attorney's fees against Herbert Peter Caldwell?
¶ 23. Linda was awarded $800 in attorney's fees for the contempt hearing held in 1996 and $750 for the hearing had in 2000. The issue on appeal is the award of $750. It is our ruling that the chancellor was not in error for awarding this figure.
¶ 24. Since Linda was partly successful on her motion for contempt, it follows that she is eligible for an award of attorney's fees. Lahmann v. Hallmon, 722 So.2d 614, 623(¶ 34) (Miss.1998). The award is in the discretion of the chancellor. Brooks v. Brooks, 652 So.2d 1113, 1120 (Miss.1995). It is paramount that a divorced party comply with previously issued court orders and enforcement of such decrees require nothing less than full and complete compliance. Douglas v. Douglas, 766 So.2d 68, 72(¶ 14) (Miss.Ct.App.2000) (citing Pearson v. Hatcher, 279 So.2d 654, 656 (Miss.1973)).
Thus, where a party who is entitled to the benefits of a previous judicial decree is forced to initiate further proceedings to gain compliance with the previous order of the court by the contumacious party, a failure to award attorney's fees serves to diminish the force of the decree if the entitled party is not in a position to obtain counsel.
Douglas, 766 So.2d at 72 (¶ 14) (citing Pearson, 279 So.2d at 656). An award of attorney's fees is appropriate when new litigation is forced to be initiated by the party defendant upon compliance with the previous order. Douglas, 766 So.2d at 72(¶ 14) (citing Johnson v. Pogue, 716 So.2d 1123(¶ 44) (Miss.Ct.App.1998)). However, sufficient evidence must exist to accurately assess a proper fee. McKee, 418 So.2d at 767.
*1223 ¶ 25. Linda's only testimony concerning attorney's fees was as follows:
Q. Ms. Caldwell, how much are your attorney's fees for having to come and appear before this Court to file a motion for contempt?
A. I paid $1,500.00
Q. Are you asking this Court to award you attorney's fees?
A. Yes, I am.
¶ 26. Chancellor Owens addressed the granting of attorney's fees very briefly in her bench ruling stating "[t]he testimony was that Ms. Caldwell incurred attorney fees in the amount of $1,500.00. She was successful on half of her claim and the Court awards attorney fees in the amount of $750.00 as it relates to the contempt of court."
¶ 27. Linda testified as to the expense she incurred in pursuing the contempt action against Herb. The chancellor made some findings on the record which were sufficient for a contempt proceeding. We affirm the award of $750 in attorney's fees.

Conclusion
¶ 28. We find that the lower court committed manifest error with respect to the issue of credit owed for overpaid child support. We reverse and remand with instructions that the lower court make appropriate calculations concerning the amount owed to Herb. Upon this determination, the credit owed could be applied to the amount of past due property settlement.
¶ 29. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED EQUALLY, HALF TO THE APPELLANT AND HALF TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] The Mississippi Rules of Civil Procedure govern the practice and procedure rules, terms and forms for the use by practitioners in the courts of this state. We did not find any such "motion to re-set child support" during our examination of the appropriate rules. "A motion is a short and succinct proposal or suggestion bringing to the notice of the court some pertinent matter or subject in the progress of the case which cannot be appropriately or effectively raised by any pleading. A motion should not, however, be permitted to usurp the place of regular formal pleadings when they are appropriate." Billy G. Bridges & James W. Shelson, Griffith's Mississippi Chancery Practice, § 400 The office of a motion, 211 (2000). As the case sub judice is a domestic relations case, Rules 81(d)(1) and (2) of the Mississippi Rules of Civil Procedure are applicable. Rule 81(d)(3) reference the specific types of pleading. The "motion to re-set" would be properly titled as a "petition for modification of child support." We would caution the members of the Mississippi Bar from titling legal documents using their own terms. See M.R.C.P. 81(d)(1)-(3) and comments thereto; M.R.C.P. 81(f).
[2] As in footnote 1, we can not find any such "motion to terminate child support." See M.R.C.P. 81(d)(1)-(3) and comments thereto; M.R.C.P. 81(f).