MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. The Harrison County Chancery Court modified the child support obligation of Patrick Andres based upon the emancipation of his son and granted Patrick a credit for child support payments made after his son’s emancipation. Aggrieved by the chancellor’s order, Doris Andres, his ex-wife, appeals arguing: (1) the trial court erred in retroactively modifying the child support owed by Patrick; (2) the trial court erred in granting Patrick a credit for certain child support payments; and (3) the trial court ignored the clean-hands doctrine. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Patrick and Doris were married on May 5, 1989. During their marriage, Patrick adopted Doris’s child from her previous marriage, A.J.; the two also had a daughter together, Alise. However, Patrick and Doris separated in May 1995, and they were subsequently granted an irreconcilable differences divorce by the Harrison County Chancery Court on May 23, 1997. As part of the divorce decree, Patrick and Doris executed a separation agreement which provided in part that Doris would have permanent physical custody of A.J. and Alise and that Patrick would pay $300 per month in child support until July 1, 1997, with child support increasing to $400 per month beginning on August 1, 1997. The agreement provided that the child support would cease when the minor children reached the age of majority, became emancipated, or through a court order. This separation agreement was modified by the Harrison County Chancery Court on June 11, 2003, by increasing the amount of child support Patrick had to pay from $400 per month to $504 per month beginning on June 1, 2003.
 

 ¶ 3. After the divorce, Doris remained on the Mississippi Gulf Coast while Patrick moved to Ohio. In August 2005, Hurricane Katrina made landfall on the Mississippi Gulf Coast and caused historic and catastrophic damage. Thereafter, Doris sent Alise to live with her aunt in Georgia, while Doris stayed on the Mississippi Gulf Coast. It is apparent from the record that, prior to Hurricane Katrina making landfall, A.J. had moved out of Doris’s house and remained on the Mississippi Gulf Coast. At Doris’s direction, Patrick mailed his child support payment for August 2005 directly to Alise’s aunt in Georgia. Patrick continued to mail his child support to Alise in Georgia from August 2005 until April 2006, when Alise returned
 
 *317
 
 to the Mississippi Gulf Coast. Patrick continued to make his child support payments for another two months, then, after making half of a child support payment for June 2006, Patrick stopped making child support payments. Patrick did not make any child support payments from July 2006 to October 2007, at which time he resumed making his monthly child support payments via a wage garnishment.
 

 ¶4. Meanwhile, in January 2007, Doris filed a complaint for contempt and an upward modification of child support. Patrick responded by filing a counterclaim against Doris for contempt and for a downward modification of child support. According to Patrick, the matter was continued several times, and it was finally heard on January 28, 2008.
 

 ¶ 5. In a May 23, 2008, order, reflect the January 28, 2008, hearing, the chancellor found the following: A.J. was emancipated as of June 2005; Patrick should have been paying $354.97 from June 2005 until May 2006 instead of $504; Patrick was given a credit for $1,639.33 to reflect the overages paid to Doris from June 2005 until May 2006; Patrick owed $5,794 in arrearages; and Patrick was in “contumacious contempt” for failure to pay child support. A judgment for $4,154.67 was entered against Patrick for his arrearages.
 
 [1]
 
 Patrick was also ordered to pay $424 per month in child support until further order of the court, and Patrick was to maintain health insurance on Alise. It is from this order that Doris appeals.
 

 STANDARD OF REVIEW
 

 ¶ 6. In
 
 R.K. v. J.K.,
 
 946 So.2d 764, 772(¶ 17) (Miss.2007), the supreme court outlined our standard of review on appeal:
 

 Our scope of review in domestic relations matters is limited by the familiar substantial evidence/manifest error rule. This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Particularly in the areas of divorce and child support, this Court must respect a chancellor’s findings of fact which are supported by credible evidence and not manifestly wrong.
 

 (Internal citation omitted).
 

 I. WHETHER THE TRIAL COURT ERRED IN MODIFYING THE CHILD SUPPORT.
 

 ¶ 7. Mississippi Code Annotated section 93-ll-65(8)(a) (Supp.2008) provides that: The duty of support of a child terminates upon the emancipation of the child. Unless otherwise provided for in the underlying child support judgment, emancipation shall occur when the child:
 

 (i) Attains the age of twenty-one (21) years, or
 

 (ii) Marries, or
 

 (iii) Joins the military and serves on a full-time basis, or
 

 (iv) Is convicted of a felony and is sentenced to incarceration of two (2) or more years for committing such felony
 

 “Our supreme court has also made it clear that ‘[a] parent is relieved of the legal duty to support his child once the child is emancipated whether by attaining the age of majority or otherwise.’ ”
 
 Houck v. Houck,
 
 812 So.2d 1139, 1142(¶ 9) (Miss.Ct.App.2002) (citing
 
 Crow v. Crow,
 
 622 So.2d 1226, 1229 (Miss.1993)).
 

 ¶ 8. However, as Doris correctly points out, “child support obligations vest
 
 *318
 
 in the child as they accrue. Once they have become vested, ... they cannot be modified or forgiven by the courts.... ” [E]ach payment that becomes due and remains unpaid “becomes a ‘judgment’ against the supporting parent.”
 
 Id.
 
 at 1143(¶ 11) (citations omitted). “No party obligated by a judicial decree to provide support for minor children may resort to self help and modify his or her obligation with impunity.”
 
 Crow,
 
 622 So.2d at 1231.
 

 ¶ 9. These rules create a paradox: a vested child support obligation cannot be forgiven, but a child support obligation terminates upon emancipation and cannot be modified by a party. The supreme court ultimately answered this question, but not before reaching a contra position.
 

 ¶ 10. In
 
 Moore v. Moore,
 
 372 So.2d 270 (Miss.1979), the supreme court addressed this quagmire. In
 
 Moore,
 
 the supreme court disallowed a retroactive reduction in child support obligations based upon the emancipation of one of multiple children being supported by a child support decree.
 
 Id.
 
 at 271. Relying on the ruling in
 
 Moore,
 
 the supreme court in
 
 Williams v. Rembert,
 
 654 So.2d 26 (Miss.1995) applied the same logic. In
 
 Williams,
 
 the chancellor initially forgave a portion of a child support arrearage where the record indicated that the father had unilaterally reduced his child support payments upon the emancipation of one of his children.
 
 Id.
 
 at 27. Upon reconsideration, the chancellor changed his ruling based upon precedent that precluded the retroactive reduction of vested child support obligations, which the supreme court affirmed.
 
 Id.
 
 at 27-29.
 

 ¶ 11. The supreme court has reversed course more recently. In
 
 Nichols v. Tedder,
 
 547 So.2d 766, 781 (Miss.1989), an obligor father was allowed a credit for child support paid subsequent to one of his children reaching the age of twenty-one and the child moving into the father’s home.
 

 ¶ 12. Citing
 
 Nichols,
 
 the supreme court in
 
 Sumrall v. Munguia,
 
 757 So.2d 279, 285(¶ 28) (Miss.2000), held that the chancellor abused his discretion in refusing to grant the father a credit for excess child support payments made following his son’s emancipation.
 

 ¶ 13. The court in
 
 Department of Human Services v. Fillingane,
 
 761 So.2d 869 (Miss.2000) settled the conflicting holdings in the above cases. In
 
 Fillingane,
 
 the chancellor reduced the father’s arrearages to reflect the emancipation of his children.
 
 Id.
 
 at 870(¶ 6). Citing the equitable principles that form the basis of our chancery court and the deferential standard given to a chancellor’s ruling on appeal, the supreme court found that it was within the discretion of the chancellor to grant a credit to the husband for child support payments made subsequent to a child’s emancipation.
 
 Id.
 
 at 872(¶ 13).
 

 ¶ 14. Turning to the case at bar, we find that the chancellor did not err in modifying Patrick’s child support obligation to reflect A.J.’s emancipation. Mississippi Code Annotated section 93-11-65(8)(a)(i) provides that a person’s child support obligation should terminate upon the child becoming emancipated after attaining the age of twenty-one years. The chancellor found that A.J. was emancipated in June 2005, the month of his twenty-first birthday.
 
 [2]
 
 Applying the plain lan
 
 *319
 
 guage of the statute, we find that the trial court was correct in finding that A.J. was emancipated as of June 2005.
 

 ¶ 15. Mississippi Code Annotated section 43-19-101 (Rev.2004) provides the guidelines for the amount of child support due from a percentage of the payor or parent’s gross income as follows: 14% for one child; 20% for two children; 22% for three children; 24% for four children; and 26% for five or more children. Upon finding that A.J. was emancipated, Patrick’s duty to pay child support for A.J. ceased, and his child support obligation then became solely for his daughter, Alise. Therefore, Patrick should have only been paying 14% of his adjusted gross income, instead of 20% for two children. The chancellor recognized this fact and ordered that Patrick should have been paying $354.97 since June 2005, the month of A.J.’s emancipation, instead of $504 for two children. We conclude this is the correct result.
 

 ¶ 16. Additionally, Patrick and Doris’s separation agreement provided that Patrick’s child support obligation would terminate upon the emancipation of the children. The supreme court and this Court have treated such separation agreements as contracts and given weight to the stipulations and requirements outlined in them.
 
 See Mottley v. Mottley,
 
 729 So.2d 1289, (Miss.1999);
 
 Crow,
 
 622 So.2d at 1229;
 
 Harmon v. Yarbrough,
 
 767 So.2d 1069, (Miss.Ct.App.2000). There was no evidence presented that the agreement was not entered into freely, and we find that the clause is unambiguous. Therefore, Patrick and Doris were bound by the provision in the separation agreement that Patrick’s child support obligation would discontinue at the emancipation of the minor children.
 

 ¶ 17. Given the precedent that allows a chancellor the discretion to grant a parent credit for child support obligations that vested after the emancipation of a child, we find that the chancellor did not abuse his discretion in reducing Patrick’s child support arrears to reflect the emancipation of A.J. To hold otherwise would “unduly restrict a chancellor’s ability to make an equitable ruling.”
 
 Fillingane,
 
 761 So.2d at 872(¶ 13). Accordingly, this issue is without merit.
 

 II. WHETHER THE CHANCELLOR ERRED IN GRANTING A CREDIT FOR CHILD SUPPORT PAYMENTS.
 

 ¶ 18. “[A] chancellor should have the discretion to grant an obligor parent a credit for child support payments which were made on behalf of a child subsequent to that child’s emancipation.”
 
 Id.
 
 “Child support payments are for the benefit of the child, not the recipient parent.”
 
 Strack v. Sticklin,
 
 959 So.2d 1, 6(¶ 15) (Miss.Ct.App.2006) (citation omitted).
 

 ¶ 19. As stated above, the supreme court in
 
 Nichols, Sumrall,
 
 and
 
 Fillingane
 
 ruled that a parent should be given credit for child support payments made after a child becomes emancipated. This Court has applied the rule that a parent is owed a credit for overpayments made after a child has been emancipated.
 
 See Caldwell v. Caldwell,
 
 823 So.2d 1216, 1221 (¶ 19) (Miss.Ct.App.2002);
 
 Houck v. Houck,
 
 812 So.2d 1139, 1143(¶ 12) (Miss.Ct.App.2002).
 

 ¶20. The chancellor found that Patrick was owed a credit of $1,639.33 for overpayments made from July 2005 to May 2006. This was during the period when Alise resided with her aunt in Geor
 
 *320
 
 gia. Doris argues that Patrick should not have been granted a credit for child support payments made to Alise’s aunt while Alise was living with her. Doris states that she only directed Patrick to make one child support payment to Alise’s aunt, and Patrick should not receive a windfall for the other child support payments.
 

 ¶ 21. As stated above, child support is for the benefit of the child, not the custodial parent. Patrick maintained his child support duty by directing his payments to Alise as she moved around after being forced out by Hurricane Katrina. Patrick provided photocopies of the canceled checks of his payments made to Alise’s aunt while Alise was residing with her. When Alise returned to the Mississippi Gulf Coast, Patrick resumed sending his payments to Doris. These actions establish that Patrick upheld his child support obligation from July 2005 to May 2006.
 

 ¶ 22. Contrarily, the outcome of Doris’s argument would result in an unjust enrichment to her as she would be receiving funds which Patrick had already paid to Alise. This would hardly be an equitable result for Patrick.
 

 ¶ 23. Additionally, the chancellor found that A.J. was emancipated in June 2005, yet Patrick continued to pay child support for A.J. and Alise until May 2006. The credit was given by the chancellor to compensate Patrick for child support payments made to A.J. while Patrick was not under a legal duty to continue his child support payments to A. J.
 

 ¶ 24. Accordingly, we find the chancellor did not abuse his discretion in granting Patrick a credit for child support payments made to Alise’s aunt while Alise was residing with her and subsequent to A.J.’s emancipation.
 

 III. WHETHER THE TRIAL COURT ERRED BY IGNORING THE CLEAN-HANDS DOCTRINE.
 

 ¶ 25. The doctrine of clean-hands provides that “he who comes into equity must come with clean hands.”
 
 Cook v. Whiddon,
 
 866 So.2d 494, 498(¶ 13) (Miss.Ct.App.2004) (citing
 
 Thigpen v. Kennedy,
 
 238 So.2d 744, 746 (Miss.1970)). “[T]he clean-hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue.”
 
 Id.
 
 (citing
 
 Bailey v. Bailey,
 
 724 So.2d 335, 337(¶ 6) (Miss.1998)).
 

 ¶ 26. Doris argues that the chancellor erred in granting Patrick relief due to his unclean hands. Doris surmises that because Patrick was in arrears of approximately $4,154.67, his hands were unclean; thus, prohibiting him from coming into the chancery court to seek relief.
 

 ¶ 27. Doris is correct that the courts have addressed this situation “countless times.” In
 
 Brennan v. Brennan,
 
 605 So.2d 749, 753 (Miss.1992), the supreme court ruled that an entry of final judgment on the petitioner’s dereliction of previous court order obligations cleansed the petitioner’s hands and revived, for consideration of modification purposes, the original divorce judgment.
 

 ¶ 28. After finding that the appellant came to court with unclean hands, the Court in
 
 Lane v. Lane
 
 850 So.2d 122, 127(¶ 14) (Miss.Ct.App.2002), found the chancellor’s judgment of total arrearages cleansed the appellant’s hands reviving his petition for modification. This Court has continued to apply this holding.
 
 See Chapman v. Ward,
 
 3 So.3d 790, 799(¶ 29) (Miss.Ct.App.2008);
 
 Howard v. Howard,
 
 968 So.2d 961, 976(¶ 37) (Miss.Ct.App.2007).
 

 
 *321
 
 ¶ 29. In the case at bar, the chancellor found that Patrick was in “contumacious” contempt for his decision to stop paying-child support payments from June 2006 to July 2007. Patrick explained that he elected to stop making the child support payments because of A.J.’s emancipation and because of his difficulty in finding Doris’s address after her relocation because of Hurricane Katrina. These non-payments resulted in Patrick having arrearages of $5,794. Similar to the petitioner in
 
 Lane,
 
 Patrick came into the court with unclean hands. However, he did not leave with unclean hands. The chancellor entered a judgment against Patrick for $4,154.67 for his child support arrearages. This judgment cleansed Patrick’s hands and allowed the chancellor to consider the modification issue. Therefore, the chancellor did not err in ignoring the clean-hands doctrine, as the judgment of arrearages cleansed Patrick’s hands making the modification ripe for determination. Accordingly, this issue is without merit.
 

 ¶ 30. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . This number reflects the difference between the amount of Patrick's arrearages and his credit for overages paid ($5,794 - $1,639.33 = $4,154.67).
 

 [2]
 

 .
 
 There was also testimony at the modification hearing that A.J. had moved out of his mother’s house by August 2006 and had mar-ded, which would also have caused him to become emancipated.
 
 See
 
 Miss.Code Ann. 93 — 11—65(8)(a)(ii).