CARLTON, J.,
for the Court:
¶ 1. A final judgment entered by the Pearl River County Chancery Court granted Jay and Mercedes Cook an irreconcilable-differences divorce and ordered Jay to pay Mercedes a monthly sum of $800 as periodic alimony. Following a hearing on Jay’s second request to terminate or, in the alternative, to reduce or suspend his periodic-alimony payments due to a material change in circumstances and Mercedes’s second request to increase the payments, the chancellor reduced the payments to $600 a month. Jay appeals and asserts that the chancellor erred by failing to apply the proper legal standard to the modification of Jay’s alimony obligation. Mercedes cross-appeals and argues that the chancellor erred in finding Jay was entitled to a reduction in alimony when Jay was in contempt of court and did not come before the chancellor with clean hands. Finding no abuse of discretion and that the chancellor’s findings are supported by substantial evidence in the record, we affirm.[1]
FACTS
¶ 2. Jay and Mercedes Cook married in March 1985 and separated in December 2000. They had no children from their marriage. The couple divorced pursuant to a final divorce decree rendered in Pearl River County Chancery Court on June 30, 2003. Jay was ordered to pay Mercedes $800 each month as periodic alimony for the period of time that Mercedes was determined to be eligible to receive Social Security disability benefits.
¶ 3. Jay remarried in November 2003 and began living with his current wife, Cynthia, and her two sons. Jay claims that after the national and local economy began to significantly decline in 2008, he fell behind in his alimony payments. The arrearages in these payments led Mercedes to file contempt proceedings against Jay in March 2009. Jay claims that he borrowed money from his family to make payments for the arrearages in the following amounts: $3,000 on September 24, 2009; $11,900 on October 22, 2009; and $4,000 on April 9, 2010. After the October 22, 2009 payment, Jay filed a complaint for modification of the divorce decree.
¶ 4. On March 25, 2010, the chancellor held proceedings on Jay’s first request to terminate, reduce, or suspend the alimony payments and on Mercedes’s request to increase the payments. Jay submitted his annual gross income since 2003: $50,290 for 2003; $58,686 for 2004; $67,274 for 2005; $58,010 for 2006; $49,112 for 2007; $44,800 for 2008; and $56,000 for 2009. After a hearing on the matter, the chancellor entered a judgment on April 21, 2010. Finding that no material change in circumstances had occurred to warrant a reduction, suspension, or termination of Jay’s periodic-alimony payments and that no circumstances existed to justify an increase in the payments, the chancellor dismissed the parties’ requests.
¶ 5. In his brief, Jay asserts that at the time of the chancellor’s first ruling on his request, he made an approximate annual salary of $40,000 working for his family’s business, Curtis Cook Enterprises Inc. (Curtis Cook). He states that at that time he also worked for Hollywood Casino, owned a commercial car-wash business, and had an approximate net monthly income of $3,600. Jay further asserts that during 2011 he lost his income from the family business and his commercial business and that he took a position with Dollar General as a manager at one of the company’s stores, where he made approximately $40,000 a year.
*841 ¶ 6. On May 16, 2012, a hearing began on Jay’s second request for termination, or in the alternative, suspension or reduction of his monthly alimony obligation. Jay testified at the modification hearing that he lost his employment with Curtis Cook in July 2011, at which point he had earned $24,616 for 2011; that he left his employment with Dollar General in August 2011, at which point he had earned $18,249.66 for 2011; and that he took a position with Blakeney Construction LLC (Blakeney Construction), which required him to travel to construction sites in Minnesota and North Dakota and paid an average of $1,638.69 per week.
¶ 7. The chancellor also stated that further testimony by Jay “revealed that [Jay] had regular employment from January 1, 2012[,] until becoming employed ... in early May 2012” as a manager in training with Quality Restaurant Concepts, doing business as Applebee’s.[2] According to Jay’s financial declaration, his monthly net income amounted to $1,785.88; his total assets were valued at $16,200; and his liabilities were valued at $61,225.25. In addition, Jay testified that he lost his car-wash business and his home to foreclosure.
¶ 8. Jay also testified at the hearing that he rents a home near his parents, who suffer from physical and mental infirmities, and acts as their primary caregiver. Jay further stated that since the previous modification hearing on March 25, 2010, he had not had any disposable or available income with which to satisfy his alimony payments and did not presently have the financial resources to pay his family’s necessary monthly expenses.
¶ 9. Mercedes also provided testimony to show the following: she receives $1,127 each month in Social Security benefits due to disabilities existing at the time of the parties’ divorce; she babysits her grandchildren and, in return, her son helps purchase tires and pay other expenses for her vehicle; she lives in subsidized housing because of her disability and barely has sufficient funds for herself; and she cannot work as a dental hygienist due to Hepatitis C even though Social Security regulations would allow her to earn up to $1,009 a month and retain her disability eligibility.
¶ 10. Relevant to Mercedes’s cross-appeal, on June 18, 2012, the chancellor entered a judgment stating that Jay came before the chancellor with clean hands, and therefore his motion to modify his alimony payments could be considered. The chancellor further found that a modification of Jay’s alimony payments was warranted due to a change in his circumstances and an application of the factors found in Armstrong v. Armstrong, 618 So.2d 1278, 1280-81 (Miss.1993). Accordingly, the chancellor reduced Jay’s monthly payments from $800 to $600. Finally, the chancellor found that Jay had fallen behind in paying Mercedes both alimony and previously ordered attorney’s fees, and the chancellor entered a money judgment in favor of Mercedes for the amount owed.
¶ 11. Aggrieved by the chancellor’s ruling, the parties appeal to this Court. Jay argues that the chancellor erred in denying his motion to terminate his alimony obligation or, in the alternative, erred by not sufficiently reducing his obligation so that he can maintain a decent standard of *842 living. For her part, Mercedes argues that the chancellor erred in allowing a modification of the alimony payment from $800 to $600.
STANDARD OF REVIEW
¶ 12. Unless a chancellor was manifestly wrong or clearly erroneous, this Court will not disturb the chancellor’s findings of fact when they are supported by substantial credible evidence. Sturda-vant, 53 So.Bd at 841 (¶ 8) (citation omitted). Concerning matters of law, however, this Court applies a de novo standard of review, and we will reverse upon a determination that a chancellor applied an incorrect legal standard. Id. We also acknowledge that in such matters we are to review the evidence in a light most favorable to the appellee. Id.
DISCUSSION
¶ 13. Jay argues that the chancellor correctly determined the factual circumstances of the case and applied the appropriate legal standard to find that a material change in circumstances had occurred, warranting a modification of alimony payments. However, Jay asserts that the chancellor committed manifest error by failing to apply the appropriate legal standard to determine the amount by which the alimony payments should be modified.
¶ 14. Specifically, Jay argues that the chancellor failed to consider the standards set forth in Nichols v. Nichols, 254 So.2d 726 (Miss.1971). To support his argument, Jay points to the following language in Nichols:
In determining the amount of alimony to be awarded, consideration must be given to the rights of the husband to lead as normal a life as reasonably possible with a decent standard of living. The general rule is that the wife is entitled to a reasonable allowance of alimony, commensurate with her accustomed standard of living and the ability of the husband to pay. In Aldridge v. Aldridge, 200 Miss. 874, 27 So.2d 884 (1946), this Court said:
Any test of the justice of such award must include not only the benefit to the wife but the resultant burden to the husband. Once it is determined, as by our acceptance of the chancellor’s finding we have done, that the amount awarded is a sufficient benefit to the wife, there remains the duty of testing the extent of the correlative burden upon the husband.
Nichols, 254 So.2d at 727 (internal citations and quotation marks omitted).
¶ 15. Jay contends that had the chancellor properly applied Nichols and its progeny, then she would have found that the evidence he submitted supported either a more significant decrease in his monthly alimony payments or an indefinite suspension of the payments. Jay argues that, when combined with the benefits Mercedes receives from subsidized housing and Medicare, the modified alimony payments result in a significant disparity in the parties’ incomes in favor of Mercedes because Jay receives no such additional benefits.
¶ 16. In response Mercedes argues that the chancellor erred by allowing a reduction in the alimony payments. She asserts that Jay was in contempt of court due to his failure to fulfill his alimony obligation to her, and under the doctrine of unclean hands, he was not entitled to relief. She further contends that Jay’s financial situation is no worse than hers and that a material change in his circumstances has not occurred to warrant a modification of the periodic-alimony payments.
*843 ¶ 17. Regarding modification of periodic-alimony payments, this Court has stated the following:
The supreme court has established that alimony awards for divorces granted on the ground of irreconcilable differences are subject to modification. Periodic alimony can be modified by increasing, decreasing, or terminating the award; and such modification can occur only if there has been a material change in the circumstances of one or more of the parties. The material change must also be one that could not have been anticipated by the parties at the time of the original decree.
Sturdavant, 58 So.3d at 841^42 (¶ 10) (internal citations and quotation marks omitted).
¶ 18. We further acknowledge:
The chancellor must consider ... the Armstrong factors in initially determining whether to award alimony, the amount of the award, and ... whether to modify periodic alimony, comparing the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree.
Steiner v. Steiner, 788 So.2d 771, 776 (¶ 16) (Miss.2001) (citing Tilley v. Tilley, 610 So.2d 848, 353-54 (Miss.1992)).
¶ 19. In Armstrong the Mississippi Supreme Court articulated the following factors for a chancellor to consider in determining the proper amount of an alimony award:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
Armstrong, 618 So.2d at 1280-81 (citations omitted).
¶ 20. In her analysis of the Armstrong factors, the chancellor stated that “since the grant of the original alimony award unto Mercedes, and further in the years since that award was upheld in the trial in this action held in 2010, Jay has suffered a series of debilitating financial setbacks, which have left him nearly depleted of disposable income.” The record reflects that the chancellor considered Jay’s financial setbacks unforeseeable at the time of the parties’ divorce. In contrast to Jay’s situation, the chancellor noted that Mercedes provided “no concrete evidence that her expenses have increased within the past years, and further, has made no effort whatsoever to obtain any form of employment (even sedentary employment) to make any contribution toward her own support.” The chancellor further noted that, while Mercedes claimed her disability left her unable to work, she still cared for her young grandchildren and drove herself various places.
¶ 21. Regarding the parties’ needs, obligations, and assets, the chancellor noted *844 Jay’s testimony that he had been unable to provide health insurance for his family for the past year and that he not only supported his wife and stepson but also served as primary caregiver for his elderly parents. The chancellor found that Mercedes, however, received Social Security and Medicare benefits, was eligible for federally subsidized housing, and supported only herself.
¶ 22. Jay and Mercedes were married for about eighteen years, were separated for the last three years of their marriage, and had been divorced for almost nine years. At the time of the modification hearing, Jay was fifty and Mercedes was fifty-seven, and neither had any minor children in their home. The chancellor further observed that since their divorce the parties had both experienced a “significant decline in their standard of living.”
¶ 23. Concerning any other “just and equitable” factors related to the decision, the chancellor found that Jay made several good-faith attempts to sufficiently increase his income to meet his periodic-alimony payments. However, those attempts had proven unsuccessful. In comparison, the chancellor found that Mercedes, due to her continued disability, had made no such attempts to improve her financial situation.
¶ 24. In reaching her determination to modify the alimony payments, the chancellor stated that Jay’s standard of living was not higher than Mercedes’s and that he had not willfully refused to support her. Instead, the chancellor found that Jay’s financial situation resulted from circumstances beyond his control. After her analysis of the Armstrong factors, the chancellor concluded that the alimony payments should be modified and should be reduced from $800 to $600 a month. Based on the record, we find no abuse of discretion in the chancellor’s consideration of the Armstrong factors or in her comparison of the relative positions of the parties at the time of their divorce with their relative positions at the time of the modification hearing. See Steiner, 788 So.2d at 776 (¶ 16).
¶ 25. Regarding Mercedes’s argument that Jay lacked clean hands, the record reflects that the chancellor entered a judgment in favor of Mercedes for past-due alimony and attorney’s fees and that the chancellor found that Jay possessed clean hands sufficient to request modification of alimony.[3] We find that the evidence in the record supports the chancellor’s decision to modify the amount of Jay’s periodic-alimony payments to Mercedes each month. Accordingly, we affirm the chancellor’s judgment.
¶ 26. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND THE APPELLEE/CROSS-APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. See Sturdavant v. Sturdavant, 53 So.3d 838, 841 (¶ 8) (Miss.Ct.App.2011).

. Jay asserts in his brief that this fact was incorrectly reported in the chancellor’s findings of fact. Jay states that Blakeney Construction actually laid him off and that he remained unemployed from January to May 2012, during which time he was only able to work odd jobs as a day laborer. Jay's attorney stated during oral argument that he did not find this misstatement of fact critical other than as it reflected Jay’s earnings in 2012. For her part, Mercedes does not challenge the chancellor's findings of fact.

. See Roberts v. Roberts, 110 So.3d 820, 829 (¶ 26) (Miss.Ct.App.2013) ("[A] judgment for the amount of an arrearage operates to ‘clean’ the hands [of] a party who would have otherwise had unclean hands for failure to pay that arrearage.” (citing Andres v. Andres, 22 So.3d 314, 320 (¶¶ 27-28) (Miss.Ct.App.2009))); see also Broome v. Broome, 75 So.3d 1132, 1140— 41 (¶ 26) (Miss.Ct.App.2011) (chancellor found that the husband's "financial situation did not relieve [him] of his obligation to pay the court-ordered alimony, [but] it did prevent a finding of unclean hands”).