REDMOND *v.* COOPER *et al.*[*]

(Division B. Dec. 3, 1928. Suggestion of Error Overruled Jan. 21, 1929.)

[119 So. 592. No. 27235.]

*Morse & Bryan* and *Franklin, Easterling & Fox,* for appellant.

*Watkins, Watkins & Eager,* for appellee.

Argued orally by *W. E. Morse* and *Lamar F. Easterling,* for appellant, and *P. H. Eager,* for appellees.

PACK, J. Appellant instituted suit in the chancery court of Hinds county, seeking, in his bill of complaint, to cancel a certain written instrument entered into between himself and Miss Mary Lee Farish, now Mrs. Johnson, one of the appellees here.

It appears that appellant's property south of Town creek joined the property of Mrs. Johnson, née Miss Mary Lee Farish, lying north of said creek. In the year 1910 some question arose as to the exact line between the land of these parties. The center of Town creek was supposed to be the line, but neither the appellant nor Mrs. Johnson seemed to know definitely where this line was.

In order that the south boundary of the Farish land and the north boundary of appellant's land might be definitely established as a straight line rather than follow the meanderings of Town creek, the agreement in question was executed by the appellant and Miss Mary Lee Farish, now Mrs. Johnson, owners of said adjoining lands at that time.

This agreement is as follows:

"This agreement entered into between M. L. Farish of the city of Jackson, county of Hinds and state of Mississippi, party of the first part; and S. D. Redmond of the city of Jackson, county of Hinds and state of Mississippi, party of the second part, Witnesseth:—

"That, whereas the party of the first part is the owner of that certain lot of land in said city situated on the west side of Farrish street and extending south to the center of Town creek, and

"Whereas the party of the second part is the owner of that certain lot of land in said city situated on the west side of Farrish street and extending north to the center of Town creek; and

"Whereas said parties are desirous of establishing the dividing line between these properties, and in order that a perpetual monument may be erected and no un-

certainty exist in reference to said point; it is agreed and understood by the parties hereto that the center of Town creek is three hundred fifty-nine and three tenths feet north of the intersection of Farrish and Capitol streets, said measurements being taken from the outside curb lines, that is to say, at the point where the north line of Capitol street intersects at said outside curb line with the west side of Farrish street, and that said line extends west from said point parallel with Capitol.''

This instrument was acknowledged by the parties and duly recorded.

The present owners of the property north of the creek were joined as defendants.

The Farish land north of the creek was designated as lot 34, and the appellant's land south of the creek comprised a part of lot 48 of a certain survey. Lot 48 extended from Capitol street northward to the center of Town creek, and was subdivided into fourteen lots; and appellant acquired what was supposed to be lots 1 to 4, inclusive, of lot 48, from W. T. Pate.

The complainant, appellant here, in his bill, alleges that one John I. Pierce, a civil engineer who had made a survey of said lots 34 and 48, approached the complainant and suggested that an agreement should be effected between the owners, so that the dividing line could be established and agreed upon; that thereafter one W. J. Clancy, representing Mrs. Mary Lee Farish Johnson, brought to complainant an instrument purporting to be an agreement as to where the center of Town creek should be, and that the same would be the dividing line between said properties; that he (the complainant) was led to believe, by signing the said agreement, that each owner would lose to the other certain small fractional parts of the lots as a result of straightening said line; that complainant did not verify the measurements referred to in said instrument, but assumed they were correctly made, and would effectuate the said agreement;

and that complainant did not observe that reference was made to measurements from the curb rather than from the intersection of the north line of Capitol street with the west line of Farish street, from which point he assumed the measurements would be made.

We do not deem it necessary to refer to the other allegations of the bill in order to present the questions decided.

The prayer of the bill was to cancel said instrument as having been executed under a mistake of fact, and that any and all claims of defendants to all property south of the center of Town creek to be canceled, and there was also a prayer for general relief.

The answer admitted the execution of the instrument, but denied that either the said Pierce or Clancy represented Mrs. Johnson, née Farish, in the preparation and execution of the same.

Considerable testimony was taken, ranging chiefly around the question of the location of the center of Town creek, at the time the instrument was executed. Some of the witnesses placed it at one point, and some at another. The complainant had built a brick building on his property, and the chancellor found, as a fact, that the center of Town creek in 1910 was one and one-half feet north of the north piers of said brick building. We cannot say there was not sufficient evidence to warrant this finding.

The appellant insists, however, that the decree of the court was not responsive to the issues joined, and to the prayer of the bill; that the purpose of the bill was to cancel the instrument, whereas the effect of the decree was to reform it. The effect of the decree was a refusal to cancel the instrument, but to construe it as executed between the parties. We quote from the oral opinion of the chancellor in the record as follows:

"A decree will be entered therefore based on the written agreement between the parties, and this testimony,

establishing the said boundary as one and a half feet north of the footings of the piers, and running parallel with the north line of Capitol street.''

Under the prayer for general relief, we think the chancellor was fully warranted in the decree entered:

"A prayer for general relief is as broad as the equitable powers of the court. Under it, the court will shape its decree according to the equities of the case, and, broadly speaking, will grant any relief warranted by the allegations of the bill, whether it is the only prayer in the bill, or whether there is a special prayer for particular and different relief; and defects in the special prayer are usually cured by a general prayer. If the facts alleged are broad enough to warrant relief, it matters not how narrow the specific prayer may be, if the bill contains a prayer for general relief. The prayer for general relief serves to aid and supplement the special prayer by expanding the special relief sought, so as to authorize further relief of the same nature. It may also serve as a substitute for the prayer for special relief, and authorize relief of a different nature when that specially prayed is denied. . . . '' 21 C. J. 679, par. 858.

The decree of the court below will therefore be affirmed.

*Affirmed.*