# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CT-01845-SCT

*DEPARTMENT OF HUMAN SERVICES, STATE OF*
*MISSISSIPPI*
*v.*

*RONALD MARSHALL*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 8/8/2001 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DARRELL BAUGHN |
| | DEBORAH DARDEN KENNEDY |
| ATTORNEYS FOR APPELLEE: | LYNN HUGHES SOREY |
| | STANLEY ALEX SOREY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 11/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     We granted the Department of Human Services' petition for writ of certiorari to address the issue of whether a son's conduct was such a clear and extreme abandonment of the parent-child relationship that the father was entitled to termination of his child support obligations. The Court of Appeals affirmed the chancellor's finding that there was a breakdown in the parent-child relationship caused in part by son's mother and grandmother. ***Miss. Dep't of Human Servs. v. Marshall***, 2003 WL 1813824 (Miss. Ct. App. April 8, 2003).     After

consideration, we reverse the judgments of the Court of Appeals and the chancery court and remand to the chancery court for further proceedings.

## FACTS

¶2.     This statement is taken from the opinion of the Court of Appeals in this case:

> Ronald Marshall (Ron) and Anita Dawn Collins (Dawn) were married in Alabama on August 20, 1984. One child was born to the marriage on June 8, 1986, Ronald Marshall, Jr. (Ronnie). Ron and Dawn separated after four years of marriage while the couple resided in Baltimore, Maryland. Dawn and Ronnie returned to Alabama, and Ron relocated to California. On or about October 27, 1989, Ron filed a petition for divorce from Dawn in Los Angeles County, California, and in the divorce petition, it was noted that child support was to be awarded to Dawn. However, the final judgment of divorce made no mention of Ronnie or the matters of child support, custody, and visitation.
>
> On September 11, 1990, before the divorce was finalized, Dawn, who was now living in Smith County, Mississippi with her mother, Sybol Anding a/k/a Johnnie Anding, signed an affidavit giving Sybol temporary custody of Ronnie. Dawn affirmed that she was giving Sybol temporary custody of Ronnie until she could "more adequately and properly" provide for Ronnie. Sybol sought the assistance of DHS in acquiring child support for Ronnie.
>
> As a result of Sybol's request for assistance, the State of Mississippi, by and through DHS on May 12, 1993, initiated a Uniform Reciprocal Enforcement and Support Act (URESA) request that California establish a child support order requiring Ron to provide medical coverage for Ronnie and pay child support to Sybol for Ronnie. On June 12, 1996, a California court ordered Ron to pay $622 monthly in child support. The boilerplate order stated that the matters were uncontested because Ron, the defendant, made no appearance in the court.
>
> On May 25, 1999, Ron filed, in the Chancery Court of Smith County, Mississippi, a motion for modification of child custody and for modification of child support, along with a petition to reconsider child support. As a result of these filings, the chancery court appointed a guardian ad litem for Ronnie.

2

In the motion and petition, Ron stated that he was a resident of Virginia and that he was seeking modification of the child custody order and requesting that he receive primary physical custody of Ronnie. Ron also sought to have child support arrearage reduced and/or terminated due to the fact that he was unable to locate, call, or visit with Ronnie.

Upon the hearing of Ron's motion and petition, the court found that Ron had a duty to support Ronnie. On August 19, 1999, a temporary order was filed granting Sybol temporary custody of Ronnie. The chancellor found that Ron did not know Ronnie's physical location until March 1998. The temporary order also gave Ron reasonable visitation with Ronnie and set the amount for child support at $583 per month. The issue of arrearage was reserved by the chancellor for a later determination.

Ron visited Ronnie on two occasions after re-establishing contact with his son. The first visit was a one-day visit in the summer of 1999, and Ron described it as a great time. However, the second visit, in the summer of 2000, was much different. That visit lasted a little over two days and was described by Ron as not so great.

Due to the disdain Ronnie exhibited toward Ron during the second visit, Ron filed a motion for psychological evaluation, citing the reason for such being Ronnie's "behavior exhibited during the scheduled visitation with his father." The court entered an order for psychological evaluation.

After the evaluation was completed, the chancellor held a hearing in which he determined a substantial and material change in circumstances had occurred between Ron and Ronnie and "as a result of said material change in circumstances there [had] been a break down [sic] in the relationship between" them. The chancellor went on to state "[t]his break down [sic] was caused partially as a result of the father moving off and not having contact with his child, even though this court understands that he made attempts to find the child, but also because of the actions of the mother and grandmother with this child." Because of this breakdown, the chancellor suspended all visitation and all child support obligations of Ron. As to the issue of back child support, the court stated, "the Department of Human Services of Smith County, MS, shall enter into an order with Mr. Marshall to collect any child support payments that are due for the benefit of the minor child."

As already observed, DHS has appealed the suspension of the child support payments, and Ron has cross-appealed the order of child support arrearage and child custody. There is no evidence in the record of DHS

3

entering into an order as mandated by the court regarding the alleged child support arrearage. The chancellor later entered a judgment of child support arrearage, ordering Ron to pay the amount of $22,000.

*Id. at *1-2*. The Court of Appeals affirmed on direct and cross appeal. It found that the chancellor did not err in finding the relationship between Ronald and Ronnie had deteriorated to the extent that Ronald should not have to pay child support for the present time. *Id*. at * 3 (¶ 17). It further found that Ronnie should not be penalized for the conduct of his parents, and it affirmed Ronald's past due child support. *Id*. at ¶ 20.

## STANDARD OF REVIEW

¶3.     This Court employs a limited standard of review when reviewing a chancellor's decision. ***Miss. Dep't of Human Servs. v. Shelby***, 802 So. 2d 89, 92 (Miss. 2001). We will not disturb a chancellor's findings unless the court was manifestly wrong, abused its discretion or applied an erroneous legal standard. ***Sandlin v. Sandlin***, 699 So. 2d 1198, 1203 (Miss. 1997).

## DISCUSSION

## WHETHER THE CHANCELLOR ERRED IN APPLYING THE *CALDWELL* TEST?

¶4.     The Department argues that Ronnie has done nothing under the authority of ***Caldwell v. Caldwell***, 579 So. 2d 543 (Miss. 1991), to forfeit his right to child support. In ***Caldwell***, we stated a child that has a strained relationship with the non-custodial parent should not be in danger of having his support reduced. ***Id.*** "The amount of money that the non custodial parent is required to pay for the support of his minor children should not be determined by the

4

amount of love the children show toward that parent." *Id*. at 548, quoting *Holston v. Holston* 473 A. 2d 459, 463 (Md. Ct. Spec. App. 1984). However, a minor child as young as fifteen years old could forfeit his support from the non-custodial parent through his actions toward that parent, but those actions must be clear and extreme. *Caldwell*, 579 So. 2d at 548.

¶5.     In *Caldwell*, the father argued that his fifteen-year-old son had abandoned the father-son relationship and disliked his father so severely that he was no longer entitled to child support. *Id*. at 548. The child admitted that he felt hostility toward his father but he was attending counseling and trying to improve the relationship. *Id*. This Court found that this was not the type of clear and extreme conduct that would cause a child to forfeit his support. *Id*. We also noted that a child could be expected to harbor some bitterness toward his father when the father tries to sell the son's home and attempts to terminate all support. *Id*. at 550. The Court of Appeals has found a child's conduct sufficiently clear and extreme to forfeit her support from her father in *Roberts v. Brown*, 805 So. 2d 649 (Miss. Ct. App. 2002). In *Roberts*, the court held that the daughter abandoned the parent-child relationship when she falsely accused her father of raping her and refused to visit him. The father was acquitted of the rape charge. *Id*. at 651. The daughter testified at the modification hearing that she did not love her father, did not want to visit or communicate with him, would not visit him, and did not desire to have a personal relationship with him. *Id*. at 650. The Court of Appeals found that the child's abandonment of the relationship coupled with the rape accusation was the type of clear and extreme conduct envisioned by *Caldwell*. *Id*. at 653.

¶6.    In the present case, the guardian ad litem appointed for Ronnie testified that Ronnie did not know his father and was reluctant to get to know him because he was unfamiliar with him. The guardian ad litem also stated that Ronnie might have felt that he was being disloyal to his grandmother when he spent time with his father and that he might have been afraid that his father would take him away from the only parent he has ever known. The guardian ad litem also testified that it was in Ronnie's best interest to develop a meaningful relationship with his father.

¶7.    Ronnie's conduct toward his father does not rise to the level of conduct required to forfeit his support. Ronald visited Ronnie twice after reestablishing contact with him. On the second visit, Ronnie would not converse with his father and when he did, he stated that he wanted to go home. One bad visit between a son that has seen his father twice after many years apart does not rise to the level of clear and extreme conduct envisioned by *Caldwell*. It is only reasonable that Ronnie would harbor some resentment against his father. Ronnie's conduct is similar to the child's conduct in *Caldwell* and is clearly not as extreme as the child's conduct in *Roberts*.

**CONCLUSION**

¶8.    To allow a father to terminate his obligations to his child after one unpleasant visit is rewarding the father for not taking an active role in his child's life. As we noted in *Caldwell*, it is to be expected that there will be some unpleasantness coming from a child who has had no relationship with his father and when the father has been behind in his child support

6

payments. The chancellor erred in finding Ronnie's conduct was sufficiently clear and extreme to forfeit his right to support from Ronald. Likewise, the Court of Appeals erred in affirming the chancellor's findings and judgment terminating Ronald's child support obligations.

¶9.     The Court of Appeals also affirmed the chancellor's judgment against Ronald for past due child support. We affirm the Court of Appeals in finding that the chancellor was not manifestly in error in awarding child support arrearage.

¶10.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART**.

**PITTMAN, C.J., SMITH, P.J., COBB, EASLEY AND CARLSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**