MAXWELL, J.,
for the Court:
¶ 1. When reviewing a chancellor’s decision to terminate a parent’s financial obligations to his or her child, we do not ask if the decision is the same one we would have made. Rather, we are instructed to give the chancellor deference and ask whether the decision was one the chancellor could have made. Here, Lori Rene Stasny sought, through a petition for modification and citation for contempt, to have her ex-husband, John Michael Wages, pay child support and college expenses for their eighteen-year-old daughter. But based on the evidence at the hearing, the chancellor determined the daughter’s actions — which included joining Stasny’s efforts to have her father’s parental rights terminated and refusing to see her father for two years — warranted forfeiture of her father’s financial obligations towards her. Because there is substantial evidence supporting the chancellor’s decision, we must affirm.
Background
¶ 2. Stasny and Wages divorced in 2004. During their marriage, they had two children, Tyler and Sarah. They agreed to joint custody and equally sharing their children’s expenses. So in their settlement agreement, incorporated into their divorce judgment, they agreed that: neither would pay the other child support; they would halve the expenses for their children’s vehicles; and they would both contribute to college trust funds.
¶ 3. In 2008, Stasny and Wages both asked the chancery court to cite the other for contempt. At the hearing, the chancellor approved their proposal to modify the settlement agreement. Stasny would have custody of Sarah and be responsible for all her expenses. Wages would have custody of Tyler and be responsible for all his expenses. They would still equally split the vehicle expenses. But they agreed to modify the amount they would contribute to the college trust funds.
¶ 4. A year later, Stasny returned to the chancery court — this time petitioning to have Wages’s parental rights terminated. Both Tyler and Sarah joined the petition. A guardian ad litem (GAL) was appointed. According to the GAL, the then sixteen-year-old Sarah clearly articulated her desire to have her relationship with Wages terminated and be adopted by her stepfather. However, there did not appear to be any statutory grounds for termination. *197 Stasny agreed to release Wages from his financial obligations towards his children if he voluntarily relinquished his parental rights. But Wages refused. And the matter sat unresolved on the chancery court’s docket.
¶ 5. The next year, in 2010, Stasny again petitioned to cite Wages for contempt. She also sought modification of the settlement agreement, asking she be awarded child support. By the time the matter came up for hearing in 2011, Tyler had reached the age of emancipation. So the only issue addressed at the hearing was Wages’s financial obligations towards then eighteen-year-old Sarah.
¶ 6. At this hearing, the chancellor heard not only about both Stasny’s and Wages’s noncompliance with the 2008 modified agreement but also the unresolved petition to terminate Wages’s parental rights. Sarah was called to testify. She discussed joining her mother’s petition to terminate Wages’s parental rights. She also testified she had not seen her father in two years, even though there was scheduled visitation every other weekend. When asked if she was willing to visit her father, she testified that school and “other priorities” took precedence over her relationship with her father. She also admitted not visiting with her father or speaking to him when he attended her high-school graduation.
¶ 7. Based on evidence from the hearing, the chancellor determined Wages should neither be held in contempt nor have to pay Stasny child support. Instead, the chancellor concluded, Sarah’s actions towards her father were “clear and extreme” enough to warrant forfeiture of all her father’s financial obligations towards her. See Roberts v. Brown, 805 So.2d 649, 653 (¶¶ 17-19) (Miss.Ct.App.2002) (citing Caldwell v. Caldwell, 579 So.2d 543, 548 (Miss.1991)).
¶ 8. The chancellor reserved entering a final judgment, giving Stasny an opportunity to submit a brief on the issue of termination of Wages’s financial obligations. During this time, Wages filed a motion to amend the pleadings to conform with the evidence at trial that, based on Sarah’s actions, his financial obligations should be terminated. The chancellor granted this motion to amend and entered a final judgment that terminated Wages’s “obligation to pay any and all expenses for his minor child, Sarah Wages, including but not limited to the following: child support, medical expenses, extra-curricular activities, vehicles[,] and funding of a college trust.”
¶ 9. Stasny timely appealed.
Discussion

I. Termination of Support

¶ 10. Stasny first argues the chancellor abused his discretion by finding Sarah’s actions were “clear and extreme” enough to warrant forfeiture. Our review of the chancellor’s decision to terminate Wages’s support obligations is deferential. If a chancellor’s findings are supported by substantial evidence, we must affirm, unless the chancellor was manifestly wrong or clearly erroneous, or applied the wrong legal standard. Blakely v. Blakely, 88 So.3d 798, 801 (¶ 3) (Miss.Ct.App.2012) (citations omitted).
¶ 11. We do agree that the chancellor supported his finding of “clear and extreme” behavior with substantial evidence. But we also point out that because Sarah was college-aged, a lesser finding that Sarah’s behavior and the deteriorated relationship with her father relieved Wages of his duty to support her through college would have been sufficient. See Caldwell, 579 So.2d at 548 (holding “clear and extreme” standard applies to minor children younger than college-aged); Hambrick v. Prestwood, 382 So.2d 474, 477 (Miss.1980) *198 (addressing when duty to support college-aged child may be terminated).

A. General Standard for Termination of Parental Support

¶ 12. The chancellor applied the standard from Caldwell — that “in order to for a child to reject the parent-child relationship to the point where child support is forfeited, the child’s actions ... have to be both ‘clear and extreme.’ ” Dykes v. McMurry, 938 So.2d 330, 333 (¶ 8) (Miss.Ct.App.2006) (quoting Caldwell, 579 So.2d at 548). And the chancellor specifically discussed the facts from Roberts, 805 So.2d at 652-54 (¶¶ 13-20), a decision from this court where we found a child’s actions “clear and extreme” enough to forfeit parental support. Drawing from these decisions, the chancellor found Sarah’s actions in joining in her mother’s efforts to have her father’s parental rights terminated and refusing to visit her father, whom she admitted she had not seen in two years, were “clear and extreme” enough to forfeit Wages’s parental support.
¶ 13. While Stasny notes that Sarah had contacted her father by email and had told the chancellor she was willing to attempt to repair their relationship if her father would “meet her half way,” it is not our role as a reviewing court to reweigh the testimony. Because there is substantial evidence supporting the chancellor’s decision, we cannot say the chancellor’s findings regarding Sarah’s actions were manifestly wrong or clearly erroneous.

B. Standard for Termination of Support of College-Aged Child

¶ 14. Further, because Sarah was college-aged, the chancellor did not have to deem her actions “clear and extreme” to find Wages had no further financial obligations. Instead, the more applicable standard is found in Hambrick. See Blakely, 88 So.3d at 802-03 (¶¶ 8-12) (holding Hambrick, 382 So.2d at 477, not Caldwell, 579 So.2d at 548, controlled issue of support forfeiture by college-aged child). Under Hambrick, a parent’s duty to support a child in college “is dependent, not only on the child’s aptitude and qualifications for college, but on whether the child’s behavior toward, and relationship with the father, makes the child worthy of the additional effort and financial burden that will be placed on him.” Hambrick, 382 So.2d at 477. In Hambrick, because the daughter showed no affection or appreciation towards her father and refused to visit him, the supreme court held that the father was under no obligation to support her through college. Id. Similarly, this court has held that a college-aged daughter who refused to visit her mother and spoke disparagingly toward her forfeited her right to support and college expenses. Blakely, 88 So.3d at 802-03 (¶¶ 8-12).
¶ 15. For the same reasons the chancellor found Sarah’s actions were “clear and extreme,” the chancellor could have terminated the parental support obligation under the lesser standard in Hambrick. Thus, we find no abuse of discretion in the chancellor’s finding that Sarah’s behavior warranted forfeiture of Wages’s financial support.

II. Issues Before Chancellor

¶ 16. Stasny next argues the chancellor erroneously granted Wages relief he did not request in his response to her petition. But procedurally, the fact that Wages did not specifically raise the issue of termination of his support obligation in his response is immaterial. See Evans v. Evans, 994 So.2d 765, 772 (¶ 23) (Miss.2008) (holding chancellor’s order that directed the parents be responsible for a child’s financial obligation “without either party raising the issue in their respective pleadings is not a procedural concern”). *199 By petitioning to cite Wages for contempt and to modify the settlement agreement to include child support, Stasny submitted the issue of Wages’s financial support of Sarah to the chancellor — and this submission “include[d] all matters touching on that subject.” Brennan v. Brennan, 638 So.2d 1320, 1325 (Miss.1994). Further, at the conclusion of the hearing, both Stasny and Wages moved for the pleadings to be amended to conform to the evidence presented at the hearing, which included evidence that Sarah’s actions amounted to forfeiture of her father’s financial support. So the issue of terminating support was properly before the chancellor.
¶ 17. Stasny also asserts the chancellor lacked authority to terminate Wages’s financial obligations towards Sarah because those obligations — in particular, the obligation to contribute to Sarah’s college trust fund — were based on a contract between Stasny and Wages. While Mississippi law does favor honoring the contractual agreements entered as part of divorce settlements and takes a “dim view” of attempts to modify them, Weathersby v. Weathersby, 693 So.2d 1348, 1351 (Miss.1997), these agreements are “quasi-contracts.” Varner v. Varner, 666 So.2d 493, 496 (Miss.1995) (citing Grier v. Grier, 616 So.2d 337, 340 (Miss.1993)). In contrast to a contract, “the chancellor always has the discretion to modify the [divorce] decree’s terms, and all such decrees are subject to the court’s approval.” Arrington v. Arrington, 80 So.3d 160, 164 (¶ 14) (Miss.Ct.App.2012) (citing Varner, 666 So.2d at 496-97).
¶ 18. Stasny, at least implicitly, recognized the quasi-contractual nature of the settlement agreement. Stasny and Wages had already sought the chancellor’s approval to modify the settlement agreement once in 2008. And in her 2010 petition, it was Stasny who asked the court to modify the settlement agreement. Though Stasny had argued a material change in circumstances warranted modifying the agreement to increase Wages’s child support, the chancellor instead found a material change in circumstances — namely, the attempt to terminate Wages’s parental rights — warranted a termination of support. See Varner, 666 So.2d at 497 (holding that, in order to modify an agreement incorporated into a divorce decree, there must be a material change in circumstances).
¶ 19. In Markofski v. Holzhauer, 799 So.2d 162, 166-67 (¶¶ 21-24) (Miss.Ct.App.2001), an ex-wife asked the court to enforce a voluntary agreement by her ex-husband to pay for his stepchild’s college expenses, an agreement that was part of their divorce settlement. The chancellor found the stepfather had no financial obligation to pay, in part because of the stepdaughter’s behavior towards her father. Id. at 167 (¶ 24). The chancellor “found that under the present circumstances, it would be unreasonable to require a man to pay for the college education of a former stepchild who accused him of molesting her, charges of which he was eventually acquitted.” Id. And relying on Hambrick, this court found no abuse of discretion. Markofski, 799 So.2d at 167 (¶¶ 24-25) (citing Hambrick, 382 So.2d at 477). While the facts here are not as egregious as the accusation in Markofski, the chancellor found that under the circumstances in this case — Sarah’s participation in the proceedings to terminate her father’s parental rights, coupled with her refusal to visit him — it would be unreasonable to enforce the provision in the divorce decree that her father pay into her college trust account.
¶ 20. Because there is evidence supporting the chancellor’s decision to termi *200 nate Wages’s financial obligations, we find no abuse of discretion and affirm.[1]
¶ 21. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS AND FAIR, JJ., CONCUR. IRVING, P.J., CARLTON AND JAMES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.

. Because we affirm the chancellor's decision that Wages in under no obligation to pay child support or other expenses, we need not address Stasny’s final argument — that the chancellor erred by not requiring Wages produce to her his Rule 8.05 disclosure form, which he had presented to the chancellor in camera. See UCCR 8.05.