# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01527-SCT

*AMANDA M. COPELAND*

*v.*

*GARY NEAL COPELAND, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2015 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| TRIAL COURT ATTORNEY: | TRACY BUSTER WALSH |
| COURT FROM WHICH APPEALED: | TATE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BYRON RUSSELL MOBLEY |
| ATTORNEYS FOR APPELLEE: | A. E. (RUSTY) HARLOW, JR. |
| | KATHI CRESTMAN WILSON |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 08/31/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Amanda Copeland appeals a Tate County chancellor's termination of Gary Copeland's child-support obligation to his two minor children. We affirm the chancellor's decision, as it is supported by the record before us.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     After their divorce, Gary and Amanda were awarded joint legal custody of their minor children, with physical custody awarded to Amanda and visitation awarded to Gary. Gary subsequently filed a Petition for Citation of Contempt and For Modification and a Motion for Temporary Relief. Gary prayed the court would, *inter alia*, find that there had been a

substantial and material change in circumstances entitling Gary to custody of his minor children and attendant child support, *inter alia*, and grant any general relief deemed proper by the court.

¶3.　During the trial on Gary's petition and motion, his seventeen-year-old daughter and thirteen-year-old son testified. Based on the children's unwavering testimony, including responses to questions by the chancellor and explicit exhibits, the chancellor found that they no longer loved their father and they wished to terminate any relationship with him. Each child acknowledged sending hateful emails and texts, which included expressed desires either to kill their father or see him dead. The numerous text messages and emails admitted into evidence were filled with vitriolic invectives, expressing deep-seated anger, resentment, and ill-will not only toward their father, but also toward his parents and sister, *inter alia*, supporting the chancellor's factual finding.

¶4.　After reflecting on the testimony and evidence, the chancellor decreed that:

> there had been a substantial and material change in circumstances which warranted an analysis of the ***Albright*** [1] factors, and that after such analysis, the court finds the ***Albright*** factors favor the Defendant [Amanda] retaining custody; therefore, any request for modification of custody is hereby denied.

As to the child-support obligation, the chancellor decreed:

> the conduct of the minor children is so egregious that the Court is hereby terminating any legal obligation of the Plaintiff [Gary] to provide support for the minor children in any manner, including, but not limited to, child support, health insurance, and medical expenses not covered by insurance, and any other form of support previously ordered by this court.

---

[1] ***Albright v. Albright***, 437 So. 2d 1003 (Miss. 1983).

The chancellor announced from the bench that "the relationship between father and children has deteriorated to a point unlike this court has seen." Relying on ***Caldwell v. Caldwell***, 579 So. 2d 543 (Miss. 1991), and its progeny, the chancellor concluded that the children had severed and terminated any relationship they may have had with their father. The chancellor stated that "the only time in which the children had any physical contact or personal contact with their father since this divorce was when they wanted something by way of money or possessions." The chancellor found that the children's conduct had severed the relationship to the point that Gary was relieved legally of any support of the children. The chancellor declared that he was "well aware that the case must be extreme in order to take this action, and I believe that it is." Yet the learned chancellor also left the door open for reconciliation and expressed his willingness to reconsider the resumption of child support. He found that "[t]he issue of child support may be revisited in the future, should the relationship between the Plaintiff and the minor children be amended."

**ANALYSIS**

¶5. Amanda appealed, arguing that the chancellor's order abating Gary's support obligation was in error because (1) the chancellor was manifestly wrong in granting relief that was not requested; (2) the children's animosity towards their father existed at the time of the divorce; and (3) the chancellor's decision was not supported by the evidence. The standard of review in child-custody cases is well-settled:

> This Court employs a limited standard of review in child-custody cases and will "affirm findings of fact by chancellors . . . when they are supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was

3

applied." ***Borden v. Borden***, 167 So. 3d 238, 241 (Miss. 2014). Additionally, "findings of fact made by a chancellor may not be set aside or disturbed upon appeal if they are supported by substantial, credible evidence." ***Marascalco v. Marascalco***, 445 So. 2d 1380, 1382 (Miss. 1984).

***Carter v. Carter***, 204 So. 3d 747, 756 (Miss. 2016).

### I. The chancellor did not err by granting relief that was not specifically requested.

¶6. In his pleadings, Gary sought the following relief:

> 5. There has been a substantial and material change in circumstances since the entry of the prior Order of this Court which adversely affects the minor children of the parties to wit: . . . specifically, the prior Order should be modified to grant custody of the minor children to Plaintiff, and with regard to visitation, child support, and income tax exemptions. . . .

> 7. The Plaintiff is entitled to such other, different, or general relief as the evidence shows proper. . . .[2]

The pleadings raised the issue of financial support for the children, *inter alia*. *See* ***Brennan v. Brennan***, 638 So. 2d 1320, 1325 (Miss. 1994) (When a party submits for the court's consideration the issue of child support, he submits all issues pertaining to the subject of that support).

---

[2] Gary requested the same relief again in his prayer for relief:

> (e) That the Court modify the prior Order(s) to grant custody of the minor children to Plaintiff, and with regard to visitation, child support, and income tax exemptions;
> . . .

> (g) That the Court should grant Plaintiff such further, different, or general relief as the Court finds proper upon the evidence when this cause comes on to be heard. . . .

4

¶7.     Additionally, Rule 54(c) of the Mississippi Rules of Civil Procedure reads in pertinent part that ". . . every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, *even if the party has not demanded such relief in his pleadings. . . .*" M.R.C.P. 54(c) (emphasis added). Furthermore, in **Redmond v. Cooper**, 151 Miss. 771, 119 So. 592 (1928), this Court affirmed a chancellor's decree and held that:

> A prayer for general relief is as broad as the equitable powers of the court. Under it, the court will shape its decree according to the equities of the case, and, broadly speaking, will grant any relief warranted by the allegations of the bill, whether it is the only prayer in the bill, or whether there is a special prayer for particular and different relief; and defects in the special prayer are usually cured by a general prayer. If the facts alleged are broad enough to warrant relief, it matters not how narrow the specific prayer may be, if the bill contains a prayer for general relief. The prayer for general relief serves to aid and supplement the special prayer by expanding the special relief sought, so as to authorize further relief of the same nature. It may also serve as a substitute for the prayer for special relief, and authorize relief of a different nature when that specially prayed is denied.

**Redmond**, 119 So. at 593 (quoting 21 C. J. 679, ¶ 858).

¶8.     Whether we analyze this issue under the specific request concerning child support or, alternatively, under the general request for relief, Gary prevails. Accordingly, we find that the chancellor neither abused his discretion nor applied an erroneous legal standard. His judgment complies with our laws.

## II.     The chancellor did not err in determining the children's conduct was an after-arising material change in circumstances.

¶9.     Child-support changes are warranted "where there is a showing of an after-arising material change in circumstances regarding one or more of the interested parties, i.e., the

5

father, mother, or child." ***Setser v. Piazza***, 644 So. 2d 1211, 1215 (Miss. 1994) (citing ***Gregg v. Montgomery***, 587 So. 2d 928, 931 (Miss. 1991)). The change in circumstances "must have been unanticipated by the parties at the time the child-support judgment was entered." ***Ravenstein v. Ravenstein***, 167 So. 3d 210, 218 (Miss. 2014) (citing ***McEwen v. McEwen***, 631 So. 2d 821, 823 (Miss. 1994)). Upon review of the record, we cannot say that the chancellor committed manifest error in finding a material change in circumstances. Even if, as Amanda argues, the children were hostile to Gary before the divorce decree was entered, Gary presented substantial evidence of a fervid increase in the children's hostility after the divorce. For these reasons, we find this issue to be without merit.

### III. The chancellor's termination of Gary's child-support obligation was supported by the evidence.

¶10. The holdings in similar cases illustrate the Herculean balancing act which is required of our chancellors. The outcome in each of the similar cases rested upon the issues raised and joined by the parties and the specific facts presented at those trials. The varied holdings in like cases reveal that our chancellors astutely recognize the task before them before announcing their final judgments. Such balancing acts are part of the foundation upon which our deferential standard of review must lie. Our review of findings of facts is highly deferential to the chancellors, for only he or she has heard the live testimony and observed the witnesses firsthand. We then determine whether the findings of facts support the conclusions of law. In today's case, they do.

¶11. In this case, the chancellor not only provided a sound legal basis for his ruling, but rendered detailed factual findings before he decreed that the children had forfeited their right

to financial support from Gary based on their "clear and extreme" conduct and behavior. In his ruling from the trial bench, he stated:

> The children through emails and text messages, as well as in-court testimony, have referenced their hatred and their unwillingness to have a relationship with their natural father. They have sent vicious, venomous, and hateful emails and texts directed especially to him over and over and over again expressing their distaste, lack of love, and, in fact, their hatred for him to the point that they wish that he, in fact, were dead, or under certain circumstances, that they would kill him.
>
> . . .
>
> The Court finds based upon the actions of the children in this case at bar, that under the parameters set forth in *Caldwell v. Caldwell*, they have taken the position as young as they may be, to completely terminate any relationship which they may have with their father and them. The Court is extremely cognizant that the right of visitation of a party is a very precious right to be protected and only in extreme cases – clear and extreme cases sufficient to constitute a forfeiture of child support should that remedy be invoked.
>
> In this case based upon the evidence presented where the children who have been supplied with their own computers and their own cell phones and sufficiently encouraged or at least unencouraged by the mother have set forth that their relationship should not continue.

The chancellor reviewed numerous texts and emails from the children to their father, expressing an intense hatred of their father. Even then, the chancellor afforded the children an opportunity to repudiate the texts and emails during their live testimony. Each child rejected this invitation and confirmed his or her convictions as to how he or she felt about their father. The chancellor, being the only one to view the witnesses and observe their demeanor, is in the best position to determine if the actions and conduct of the minor children were convincingly clear and extreme, warranting a termination of child support.

¶12.    This Court in ***Caldwell*** held that a minor child could "forfeit his support from a non-custodial parent," if the child's conduct was "clear and extreme." ***Caldwell***, 579 So. 2d at 548. We find no error in the chancellor's findings that the children's clear and extreme conduct forfeited their right to support from their father.

¶13.    We are ever-mindful of the sage advice restated by Justice Maxwell (then a Court of Appeals judge in a case addressing forfeiture)."When reviewing a chancellor's decision to terminate a parent's financial obligations to his or her child, we do not ask if the decision is the same one we would have made. Rather, we are instructed to give the chancellor deference and ask whether the decision was one the chancellor could have made." ***Stasny v. Wages***, 116 So. 3d 195, 196 (Miss. Ct. App. 2013).[3]

¶14.    While the Legislature through statutes has expanded the common-law obligation(s) to pay child support, the statutes singled out by the dissent are not the only or exclusive statutes addressing child support. *See also* Miss. Code Ann. §§ 93-5-23, 93-5-24, 93-5-34, 93-7-7, 93-9-35, 93-11-65, 93-11-69, and 93-11-71 (Rev. 2013). Nor is the full body of our law found in statutes. Courts must always be vigilant neither to read statutes to override the constitutional restrictions imposed on the various magistrates by Article 1, Sections 1 and 2 of the Mississippi Constitution, nor to interfere with the constitutional authority of chancellors found in Article 6, Section 159.

---

[3] The Court of Appeals affirmed the chancellor's findings that the child's actions were clear and extreme to a degree to justify forfeiting parental support. ***Stasny***, 116 So. 3d at 198.

¶15. The dissent observes that the chancellor did not reference Sections 43-19-101 and 43-19-103 of the Mississippi Code in his ruling. We do not dispute that observation, but those sections have no relevance here.[4] Once the chancellor determined that, based on the clear and extreme conduct of the children, child support was forfeited, computing an *amount* of child support using the formula provided by the guidelines is irrelevant. It is a *non sequitur* to require a chancellor to apply irrelevant guidelines effecting the *amount* of child support, when the same chancellor has decreed the duty to pay child support no longer exists. All child support statutes clearly have purpose and should be consulted in all cases to determine an appropriate amount of child support when child support is due. In this case, no child support is due.

¶16. The only issues presented to this Court by the parties were: (1) was the chancellor manifestly wrong in granting relief that was not requested; (2) did the children's animosity toward their father exist at the time of the divorce; and (3) was the chancellor's decision supported by the evidence. Neither party requested that the chancellor apply Sections 43-19-101 or 43-19-103.

¶17. This issue was not presented to the trial court, nor was this issue raised in the original appellate briefs. "This Court may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record." ***Shelton v.***

---

[4] The applicability of these same sections has not been raised in a single case before this Court or the Court of Appeals addressing termination of child support. *See **Dep't of Human Servs. v. Marshall**,* 859 So. 2d 387 (Miss. 2003); ***Caldwell***, 579 So. 2d 543; ***Stansy***, 116 So. 3d 195; ***Dykes v. McMurry***, 938 So. 2d 330 (Miss. Ct. App. 2006); ***Roberts v. Brown***, 805 So. 2d 649 (Miss. Ct. App. 2002).

*Kindred*, 279 So. 2d 642, 644 (Miss. 1973). Following this Court's well-established precedent, as these issues were not raised by the parties, we decline to further address them.

¶18.    There is no question that a chancellor has the authority to terminate child support. In this case, the chancellor made clear findings on the record as to why the children had forfeited Gary's financial support.

## CONCLUSION

¶19.    Thus, we find that the chancellor did not abuse his discretion, was not manifestly wrong or clearly erroneous, and did not apply an erroneous legal standard. The chancellor's findings of fact were supported by substantial and credible evidence. We affirm.

¶20.    **AFFIRMED.**

**WALLER, C.J., MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, P.J., AND MAXWELL, J. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.; COLEMAN, J., JOINS IN PART.**

**COLEMAN, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶21.    I concur with the majority's analysis of and holdings as to the first two issues addressed in the majority opinion, *i.e.*, the granting of relief not specifically requested and finding that the attitudes of the children toward their father constituted a material change in circumstances.

¶22.    However, as to the third issue and the bone of contention between the majority and Presiding Justice Dickinson, I, on the one hand, agree with the dissent that the statutory scheme for child support has supplanted the common law. I agree that the decisions to award

10

child support and to set the amount of support are both governed by Mississippi Code Sections 43-19-101 and 43-19-103. Accordingly, the majority is incorrect when it writes that the two code sections have no relevance. (Maj. Op. at ¶ 15). Moreover, the majority's intimation that Sections 43-19-101 and 43-19-103 are unconstitutional encroachments upon the constitutional jurisdiction of the chancery courts is misplaced. (Maj. Op. at ¶ 14).

¶23.  Nevertheless, the trial court committed no reversible error. The chancellor issued an oral opinion from the bench and clearly stated that he relied on *Caldwell v. Caldwell*, 579 So. 2d 543 (Miss. 1991), when he ended Gary Copeland's child support obligations. Amanda Copeland failed to argue at the time or on written motion for rehearing that the trial court had erred in doing so. Absent plain error, the court does not hold trial judges in error for issues not presented to them for decision or not raised by the aggrieved party in its brief.

¶24.  Under the plain error doctrine, the Court "retains the inherent authority to notice error to prevent the manifest miscarriage of justice, despite trial counsel's failure to preserve the error." *Alpha Gulf Coast, Inc. v. Jackson*, 801 So. 2d 709, 727 (¶ 60) (Miss. 2001) (citing *Johnson v. Fargo*, 604 So. 2d 306, 311 (Miss. 1992)). "For the plain-error doctrine to apply, there must have been an error that resulted in manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Johnson v. State*, 155 So. 3d 733, 738 (Miss. 2014) (quoting *Burdette v. State*, 110 So. 3d 296, 303 (Miss. 2013)). Because the Court has not before today acknowledged the abrogation of the common law by Sections 43-19-101 and 43-19-103 and there is insufficient reason to believe the chancellor would have reached a different result had he considered the issue pursuant to the

11

statutes, the error does not arise to the level of plain error. Accordingly, I agree with the result reached by the majority and would affirm.

**RANDOLPH, P.J., AND MAXWELL, J., JOIN THIS OPINION IN PART.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶25.    When Mississippi established its current Constitution in 1890, it granted to the courts of chancery not only the jurisdiction over matters controlled by principles of equity, but also jurisdiction over several areas controlled by law, including "[d]ivorce and alimony," and "minor's business."[5] Since its origin in England in 1576,[6] the duty to support children has been controlled by legal ("common law") principles.

¶26.    At common law, parents had an obligation to support their children. But when a child displayed a certain level of disrespect for a noncustodial parent, judges had the discretion to relieve that parent of the obligation to pay child support. And generally, we still apply common-law principles and doctrines to the issues before us.

¶27.    But it is the Legislature—not this Court—that decides whether to leave common-law principles and doctrines in place or to supplant them with statutes; and when the Legislature, through its statutes, speaks on a matter of substantive law, the statutory law supplants the common law.[7] So, if the case before us is to be decided properly, the first question is

---

[5] Miss. Const. art. 6, § 159.

[6] Act For Setting of the Poor on Work, and for the Avoiding of Idleness, 18 Elizabeth 1, C. 3 (1576).

[7] *See e.g.* ***DeSoto Cty. v. T.D.***, 160 So. 3d 1154, 1156–58 (Miss. 2015) ("Others, including Mississippi, have supplanted the common law with statutes that have established the legislative branch's views of the appropriate limits and protections of sovereign

whether the Legislature has created a child-support obligation. Clearly it has. And statutes supplant the common law, so chancellors must look to statutes for their authority to award—or not to award—child support. And if their cases are to be decided properly, they must follow the law.

¶28. The majority correctly observes that statutory enactments may not take away from constitutional mandates; but that observation has no bearing here. Nothing in any constitutional provision cited by the majority creates a duty to pay child support. Thus, courts should look to the content of the statutes that control child support.

¶29. Section 43-19-101 seems quite clear to me. It creates a rebuttable presumption that child support should be paid in a certain amount based on the number of children and the paying parent's adjusted gross income.[8] Under the statute, the "presumption applies in *all judicial or administrative proceedings* regarding the awarding or modifying of child support in this state."[9] And the presumption controls the amount awarded unless

> the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103."[10]

immunity. . . .Were we applying common-law immunity, we would be free to limit that immunity. But the Legislature removed our discretion with the Mississippi Tort Claims Act.").

[8] Miss. Code Ann. § 43-19-101 (Rev. 2015).

[9] Miss. Code Ann. § 43-19-101(1) (Rev. 2015) (emphasis added).

[10] Miss. Code Ann. § 43-19-101(2) (Rev. 2015).

¶30.    The section following this mandate sets forth the criteria which may be considered to rebut the presumption:

(a)    Extraordinary medical, psychological, educational or dental expenses.

(b)    Independent income of the child.

(c)    The payment of both child support and spousal support to the obligee.

(d)    Seasonal variations in one or both parents' incomes or expenses.

(e)    The age of the child, taking into account the greater needs of older children.

(f)    Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.

(g)    The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent, or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent's homemaking services.

(h)    Total available assets of the obligee, obligor and the child.

(i)    Payment by the obligee of child care expenses in order that the obligee may seek or retain employment, or because of the disability of the obligee.

(j)    Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.[11]

¶31.    Through subsection (j)'s catchall provision, the Legislature has granted chancellors broad discretion to find that the statutory presumptions have been rebutted based on the

---

[11] Miss. Code Ann. § 43-19-103 (Rev. 2015).

14

demands of equity—broad enough, in my view, to encompass the clear and extreme conduct described in *Caldwell v. Caldwell*,[12] which the chancellor found.

¶32.    But the chancellor's analysis should have began with the rebuttable presumption that Gary must pay child support in the amount set by statute, followed by specific findings as to how the presumption was rebutted.[13]  And this analysis should have been applied to Gary's obligation to pay child support as to each child.

¶33.    My colleague, Justice Coleman, unnecessarily worries that this issue was not presented to the trial court.  Clearly, the chancellor decided the issue of whether Gary's child-support obligation should be terminated.  Amanda appealed that decision.  So he and the majority are incorrect when they suggest I would hold the chancellor in error for an issue not presented to him.    The issue—whether the child-support obligation should be terminated—was addressed and decided in the trial court.  My resort to the statutes simply applies the correct law to determine whether the chancellor's decision was correct.

¶34.    Justice Coleman agrees that the common-law duty to pay child support has been supplanted by our statutes,[14] but he finds no reversible error because "Amanda Copeland failed to argue at the time or on written motion for rehearing that the trial court erred in"

---

[12]  *Caldwell v. Caldwell*, 579 So. 2d 543, 548 (Miss. 1991).

[13] *See Chesney v. Chesney*, 910 So. 2d 1057, 1061 (Miss. 2005) (citing *McEachern v. McEachern*, 605 So. 2d 809, 814 (Miss. 1992)) ("However, for this Court to affirm an award which deviates from the guideline of Section 43-19-101(1), the chancellor must overcome the rebuttable presumption that the statutory award is the appropriate measure of child support by making an on-the-record finding that it would be unjust or inappropriate to apply the guidelines in the instant case.").

[14] Coleman Op. at ¶ 22.

relying on *Caldwell*.[15] Justice Coleman points to no rule that requires an attorney to file a post-trial motion, and I will not find an issue unappealable because an attorney failed to do something he was not required to do—especially in a case dealing with child support and child custody, such as this one.

¶35. Because the chancellor failed to follow controlling statutory mandates before terminating child support, I would remand for a proper analysis under the applicable statutory provisions.

**KITCHENS AND KING, JJ., JOIN THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART.**

---

[15] Coleman Op. at ¶ 23.